CAROL HUBBARD, Plaintiff-Appellant, *v.* SANDRA SCHUMAKER *et al.*, Defendants-Appellees.

Second District   No. 79-28

Opinion filed March 24, 1980.—Rehearing denied April 23, 1980.

Paul F. O'Neil and Russell L. Willis, Jr., both of O'Neill & Willis, of Rochelle, for appellant.

James M. Regnier and Philip H. Nye, Jr., both of Fearer and Nye, of Rochelle, for appellees.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff sought to have a constructive trust declared on a one-fourth interest in a quarter section of land conveyed by her to her brother, Roger Schumaker, now deceased. The trial court found that a constructive trust had arisen as a result of the confidential relationship which existed between plaintiff and her brother. The court held, however, that plaintiff had intended to sell the property to her brother and his wife under an agreement signed prior to the conveyance in question, and that the constructive trust would continue only until payment of the $12,000 due under the agreement.

Plaintiff argues the court erred by not ordering the property to be re-conveyed forthwith to plaintiff as the beneficial owner under the constructive trust. Defendants cross-appealed, contending no constructive trust existed because the conveyance was either a gift or supported by consideration, or because no confidential relationship existed between plaintiff and her brother. Alternatively, defendants contend the trust was barred by laches. Additionally, the defendant-purchasers of the property, the Hayengas, contend they are *bona fide* purchasers for value without notice and that the court erred in imposing a constructive trust upon the property in their possession. We find the trial court's imposition of the constructive trust was against the manifest weight of the evidence and, accordingly, we reverse.

The background of the case is as follows: On June 8, 1957, Fred L. Schumaker conveyed an undivided one-half interest in the property described as follows: "The southwest quarter of Section 12 in Township 41 North, Range 1, East of the Third Principal Meridian (exception omitted)" to his four grandchildren, Carol Hubbard, Wanda Dunahoo, Richard Schumaker and Roger Schumaker. Upon his death in 1963, the grantor's reserved undivided one-half interest was passed to the same four grandchildren.

The parties reached an agreement whereby Carol Hubbard, Wanda Dunahoo, Richard Schumaker and their spouses would convey their respective interests in the property to Roger L. Schumaker and his wife, Sandra K. Schumaker. The articles of agreement, executed on February 29, 1964, provided that Roger and Sandra Schumaker would pay the sum of $36,000 in three payments of $600 each totaling $1,800 per year, beginning March 15, 1968. Additional consideration for the agreement required Roger and Sandra to assume the existing encumbrances against the land. These debts and encumbrances included a mortgage to the

Metropolitan Life Insurance Company in the amount of $9,588, a loan from Blackhawk Production Credit Association for $1,859.25, a funeral bill of $1,200, and the lien of 1963 real estate taxes totaling $1,046.90. The articles of agreement also provided that the yearly payments would not be required when the gross income from the farm did not exceed $6,000 for the preceding calendar year. The articles included an option for the sellers to terminate the agreement for failure of Roger and Sandra to make payments under said agreement. No interest payments were required under the agreement. A warranty deed executed by the parties was delivered to the National Bank of Rochelle, Illinois, to be held in escrow until Roger and Sandra had fully complied with the payment provisions.

On the same date as the agreement, February 29, 1964, Roger and Sandra arranged to borrow $13,000 from a neighbor, Irvin Hawk. The facts surrounding this loan were in great dispute. Mr. Hawk maintained that the loan was not completed after the first meeting at the National Bank of Rochelle because the bank president had advised him that greater security was needed than was provided by the one-quarter undivided interest of Roger Schumaker. In his testimony, Mr. Hawk recalled that the parties to the loan met a few days later to close the loan and at that time Roger Schumaker had in his possession a deed to Carol Hubbard's (the plaintiff) interest in the land. However, the documents establishing the loan, including the proceeds check, are all signed and dated on February 29, 1964, six weeks before the date of the deed from Carol Hubbard to Roger L. Schumaker. Defendant, Sandra Schumaker, testified that there was only one meeting at the bank and that the loan was fully closed on February 29, 1964. The loan proceeds check was dated, cashed and paid on February 29, 1964.

The intended use for this loan money was also disputed. Richard Schumaker testified he was told the money was to be used to purchase farm machinery or to improve the farm. Defendant Sandra Schumaker testified the loan money was used to pay off certain farm obligations. The evidence shows that the three largest debts assumed under the original agreement were paid immediately after the loan proceeds were paid to Roger and Sandra Schumaker.

The deed from plaintiff to Roger Schumaker dated April 15, 1964, and recorded April 21, 1964, recited a consideration of "$10 and other good and valuable considerations." Plaintiff testified she signed over her one-quarter interest to her brother so he could borrow money because he needed machinery and things in order to begin operating the farm. Plaintiff's testimony showed that after the deed was executed she did not expect a reconveyance of her interest in the land, nor did she expect to receive any payments from him under the previous agreement. Plaintiff

repeatedly stated that Roger said he would "make it right" for her, but she could not state more exactly what was meant by this statement nor what her expectation was. The attorney who drafted the previous agreement testified that he had a conversation with plaintiff which left him with the impression that she had made a gift of her interest to Roger and Sandra.

On September 15, 1966, Richard Schumaker, Wanda Dunahoo, and their spouses executed an "Authorization" stating they were substituting only the east half of the property as security for the original articles of agreement. The authorization stated affirmatively that the plaintiff and her spouse had conveyed their property and no longer had an interest in this property. Plaintiff testified she was aware of this transaction and also that Roger and Sandra had sold part of the property to Morton Buildings in 1965. Plaintiff testified she did not ask Roger for any of the proceeds of that sale. Plaintiff testified no payments pursuant to the agreement were ever made to her nor were any expected by her since she did not consider herself a party to the agreement after she "signed off" to Roger.

Roger L. Schumaker died intestate on February 12, 1970, and his one-half interest in the property passed to his widow and minor children. Sandra Schumaker continued to perform as the remaining purchaser under the agreement until February 23, 1976, when the property was sold to defendants Glenn and Alice Hayenga for approximately $378,000. Substantial improvements were made on the property by the Hayengas after they took possession. Neither the purchasers nor the defendants had knowledge of any claim by plaintiff until this suit was filed on April 20, 1976.

■■■ When a conveyance is induced by fraud or made in the context of a confidential relationship and undue influence, equity will impose a constructive trust for the benefit of the grantor. Since there is no allegation of fraud, we consider only whether a confidential relationship and undue influence existed between plaintiff and her brother. A confidential relationship exists where there is a special confidence reposed on the one side and resulting superiority and influence are found on the other side. (*Niland v. Kennedy* (1925), 316 Ill. 253.) Even if a fiduciary or confidential relationship exists, unless undue advantage is taken of the grantor, the conveyance will not be affected. (*Neagle v. McMullen* (1929), 334 Ill. 168.) No fiduciary or confidential relationship arises out of the kinship of the parties alone. (*Niland; Perry v. Wyeth* (1962), 25 Ill. 2d 250.) A fiduciary or confidential relationship which does not exist as a matter of law must be proven by clear and convincing evidence in order to establish a basis for raising a constructive trust. (*Streeter v. Gamble* (1921), 298 Ill. 332.) Factors to be considered in determining whether such a relationship exists include the degree of kinship, disparity in age, health, mental condition, education and business experience and the extent to

which the allegedly servient party entrusted the handling of his or her business or financial affairs to the other. *Cunningham v. Cunningham* (1960), 20 Ill. 2d 500.

Plaintiff's mother testified that plaintiff and her brother had a "very close" relationship in which they seemed to "team up" and that this relationship continued on into their mature years. She also testified that plaintiff had faith in her brother and his decisions, but that she probably made most of her own decisions. Plaintiff's other brother, Richard, corroborated that she and Roger were close and that she had trust and faith in him.

During direct and cross-examination of plaintiff herself, it was established that she was nine years older than her brother. She said when he came to her to secure her interest in the farm that she was willing to help him and do what he wanted because she "happened to think a lot of him" and because she wanted him to be able to keep the farm. It was established that plaintiff was healthy, had no mental ailments, had graduated from high school and had taken some accounting courses in college. Roger also had graduated from high school. While raising her children, plaintiff and her husband operated their own farm without any assistance from Roger. She occasionally helped her husband do their own income taxes. She testified she was under no coercion to sign the deed and that she signed of her own free will. Further, plaintiff testified that she makes her own decisions. She said her brother asked her about signing over her interest, and then several days later brought the instrument over for her signature because he wouldn't have brought it to her without asking first. Plaintiff discussed the matter with her husband before signing, and he signed as well.

■ We conclude the evidence adduced to show that a confidential relationship existed between plaintiff and her brother was neither so clear nor so convincing as to warrant the imposition of a constructive trust. In fact, the evidence showed plainly that plaintiff was a fairly independent woman, capable of coping with family and financial affairs of all types, and that she was not subject to any undue influence from Roger. Accordingly, we reverse the trial court's imposition of a constructive trust upon the property.

■ We likewise reverse the second part of the trial court's finding that the constructive trust should be imposed until such time as the defendants paid plaintiff the $12,000 due under the original agreement. The conveyance recited consideration of "$10 and other good and valuable considerations." Further, plaintiff and others testified she had always been close to Roger and transferred her interest to Roger upon his request because she "happened to think a lot of him." It has long been recognized in Illinois that the natural love and affection between near relatives is

enough consideration to support a deed. (*Kirkpatrick v. Taylor* (1867), 43 Ill. 207; *McCrillis v. Utterback* (1947), 397 Ill. 550; *Brown v. Moore* (1950), 407 Ill. 618; *Klass v. Hallas* (1959), 16 Ill. 2d 161.) Notwithstanding the fact that the recital of consideration in a deed serves to estop the grantor from ever denying the legal import of the instrument as a deed of bargain and sale (*Kimball v. Walker* (1863), 30 Ill. 482), it is apparent that plaintiff had an appreciation of the family homestead born of fond memories of her childhood there. It is understandable, then, that she would be highly motivated to do what she could to help her beloved brother revitalize the farm to an operational status. Whatever influence Roger may have had was acquired through affection, not wrongful duress, and plaintiff's voluntary conveyance of her interest to Roger was not invalid on account of it. (*McCrillis*, at 554.) Plaintiff's allegation that an oral agreement to reconvey after the loan was secured was made with Roger upon delivery of the warranty deed, was contradicted by plaintiff's own testimony at trial; further, if such an agreement had been made, it would have been void under the Statute of Frauds. The alleged existence of the agreement to reconvey is also disputed by the fact that the loan in question was essentially closed on February 29, 1964, which was approximately six weeks before the April 15, 1964, date of the conveyance from plaintiff to Roger. Additionally, plaintiff's testimony clearly established that she no longer considered herself a party to the original agreement for sale and did not expect to get any money under the contract since she had "signed off and given him [her] share." Plaintiff's outright conveyance to Roger was voluntary and valid, and her rights under the prior agreement were thereby terminated.

In view of our determination that no basis for imposing a constructive trust existed and consequent reversal thereof, we need not consider the Hayengas' contention the trust was improperly imposed upon property they held as *bona fide* purchasers for value without notice.

The judgment of the circuit court of Ogle County is reversed.

Judgment reversed.

SEIDENFELD and LINDBERG, JJ., concur.