70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert MIGUEL and Jean Miguel, Plaintiffs-Appellants,
v.
Raymond J. BELZESKI, Individually and as Administrator of
the Estate of Raymond J. Bell, et al., Defendants-Appellees.
 No. 94-3389.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 24, 1995.
Decided Nov. 29, 1995.
Rehearing Denied Dec. 20, 1995.
 
 Before EASTERBROOK, KANNE and ROVNER, Circuit Judges.
 
 ORDER
 
 1
 The chain of events producing this diversity litigation[1] dates back to 1975 when Robert Miguel decided to procure a bail bond on behalf of an arrested relative from bondsman James Cosentino.[2] At that time, Robert Miguel and his wife Jean Miguel (hereinafter the "Miguels") were joint owners of a vacant, unimproved lot in Chicago (hereinafter the "property"). In order to obtain issuance of the bail bond, it was apparently agreed that Mr. Miguel would give Cosentino $5,000 together with quitclaim deeds to the property. In April, 1975, the Miguels each executed separate quitclaim deeds in favor of Raymond Bell as instructed by Cosentino. The deeds were given to Cosentino and thereafter it appears that a bail bond was issued by the Imperial Insurance Company via Bell. Although the bail bond was never forfeited, the quitclaim deeds were not returned to the Miguels. Rather, it appears that the deeds were delivered to Bell and were recorded in September, 1975. Over the years, the property has been conveyed down the line of the defendants. The property has since been developed and as of June 1993, allegedly had a fair market value of approximately $620,000.
 
 
 2
 The original complaint in this case was filed in October, 1990. The Miguels most recently alleged in their Fifth Amended Complaint that the deeds were executed and deposited with Cosentino solely as collateral for the bail bond and that the deeds were not to be delivered to Bell except upon forfeiture of the bail bond. The Miguels further alleged that by depositing the deeds with Cosentino they never intended to transfer, deliver or pass title to Bell. They seek monetary damages against certain defendants as well as a determination that title be quieted in favor of plaintiffs and that all claims and interests of defendants in the property be canceled and removed.
 
 
 3
 The district court granted summary judgment[3] on behalf of all defendants, concluding that the Miguels had not raised a genuine issue with regard to the ambiguity of the deeds and had failed to designate specific facts demonstrating a genuine issue with regard to the existence of a writing evidencing the escrow agreement that would satisfy the Illinois Statute of Frauds (hereinafter "Statute").[4] We agree with the district judge's conclusions, as evidenced in his Memorandum Opinion and Order, which is attached. Miguel v. Belzeski, 1993 WL 460847 (N.D.Ill., Nov. 5, 1993). We separately address the Miguels' arguments not addressed by the district court.
 
 
 4
 On appeal, the Miguels first argue that the district court erred by failing to credit the deposition testimony of Mr. Miguel as constituting a sworn statement setting forth the existence and terms of the agreement between Miguel and Cosentino sufficient to satisfy the Statute. This argument must fail. Defendants point out that the Miguels did not contend in the district court that the deposition testimony of Mr. Miguel was sufficient to satisfy the Statute and that this issue has therefore been waived. However, the district court specifically found that "[n]o affidavit, deposition testimony, or admission suggests that such a writing exists." Memorandum Opinion and Order dated November 4, 1993, p. 15. This finding suggests that the district court reviewed the record on its own initiative to determine whether or not summary judgment was appropriate. Although we therefore find that this issue was not waived, an examination of the excerpted deposition testimony relied upon by the Miguels fails to clearly demonstrate the existence of a writing, its terms, or that it was signed by either Cosentino or Bell.
 
 
 5
 For their second argument, plaintiffs contend that the district court erred by failing to recognize that Cosentino fraudulently breached his fiduciary duty as escrowee to the Miguels and that the defendants thereby had the burden of demonstrating the validity of the transaction. Defendants contend that this argument on appeal was also waived as not presented to the district court. The Miguels' second argument hinges on the existence of a valid escrow agreement. As the Miguels have run afoul of the Statute and have thereby failed to demonstrate a genuine issue as to the existence of the escrow agreement, we need not address the second issue or determine whether or not it has been waived.
 
 
 6
 The judgment below is affirmed.
 
 ATTACHMENT
 IN THE UNITED STATES DISTRICT COURT
 FOR THE NORTHERN DISTRICT OF ILLINOIS
 EASTERN DIVISION
 
 7
 Robert Miguel and Jean Miguel, Plaintiffs,
 
 
 8
 v.
 
 
 9
 Raymond J. Belzeski, individually and as Administrator of
 
 
 10
 the Estate of Raymond J. Bell, deceased; Mark Richardson
 
 
 11
 Bell; Holly Mills; Kirk Daniel Bell; Chicago Title and
 
 
 12
 Trust Company, as Trustee under Trust No. 9529; John J.
 
 
 13
 Lag; First Illinois Bank and Trust, as Trustee under Trust
 
 
 14
 9529; Theodore A. Wynn; Lawrence J. Oakford; NBD Trust
 
 
 15
 Company of Illinois, as Trustee under Trust 6018; Harris
 
 
 16
 Bank/Glencoe-Northbrook, N.A.; and Unknown Owners, Defendants.
 
 No. 90 C 6054
 
 17
 Docketed Nov. 3, 1993.
 
 MEMORANDUM OPINION AND ORDER
 
 18
 PLUNKETT, District Judge.
 
 
 19
 This case is before us on Defendants' motions for summary judgment. In separate motions, Defendants NBD Trust Company of Illinois, as Trustee ("NBD") and Harris Bank of Glencoe-Northbrook, N.A. ("Harris Bank"), and Defendants Raymond Belzeski, Mark Richardson Bell, Holly Mills, and Kirk Daniel Bell (collectively, the "Bell Heirs defendants") are seeking summary judgment against Plaintiffs Robert Miguel and Jean Miguel (the "Miguels") of Plaintiffs' Fifth Amended Complaint. For the reasons stated below, we grant both motions and dismiss Plaintiffs' Fifth Amended Complaint as against those Defendants.[1]
 
 Background
 
 20
 As this Court noted in its July 13, 1992, Memorandum Opinion and Order, (Memorandum Opinion and Order at 2, Miguel v. Belzeski, No. 90 C 6054 (N.D.Ill. July 13, 1992) (Plunkett, J.)), this action arises out of a series of events that trace back to April 1975. It is uncontroverted that Plaintiff Robert Miguel contacted a bail bondsman named James Cosentino at American Bonding Company in early 1975 to obtain a bond for a relative. According to Plaintiff Robert Miguel, at the time he dealt with Cosentino he believed Cosentino was " 'the brains of the outfit' " and " 'the head of the company.' " (Pls.' First Rule 12(n) Stmt. p 2.)
 
 
 21
 Mr. Miguel agreed to give Cosentino $5000 and a quitclaim deed to a piece of property owned by Plaintiffs (the "Property") in return for issuance of a $25,000 bond for Mr. Miguel's relative.[2] Plaintiffs executed quitclaim deeds on the Property in favor of a Raymond Bell on or about April 24, 1975.[3] (Defs.' Rule 12(m) Stmt. p 1.) It is uncontroverted at this point that the deeds were deposited with James Cosentino and not given directly to Bell by the Miguels. Imperial Insurance Company issued the bond through Raymond Bell, who had been appointed as Imperial's attorney-in-fact for purposes of issuing the bond. (Pls.' Resp. to Defs.' Mot. for Summ.J., Group Exh. A1.)
 
 
 22
 According to Plaintiffs, the deeds were intended solely as collateral for the bond.[4] (Fifth Am.Compl. at p 14.) They allege that Cosentino was not to deliver the deeds to Bell unless the bond was forfeited. (Id.) Plaintiffs maintain that they never intended to transfer title to Bell or effect a delivery of the deeds to Bell by depositing the deeds with Cosentino. (Id.)
 
 
 23
 Plaintiffs have not produced a written agreement or any writing evidencing the condition allegedly attached to the transfer of the Property or the alleged escrow arrangement between Plaintiffs and Cosentino. The deeds themselves do not refer to any conditions or the existence of an extrinsic agreement. (Fifth Am.Compl., Exhs. A & B.) Plaintiffs allege that there are other documents but only those recorded in Cook County can be located. (Pls.' Rule 12(n) Stmt. at p 15.)
 
 
 24
 The bond was never forfeited. (Pls.' Resp. to Defs.' Mots. for Summ.J., Group Exh. A.) Nonetheless, the deeds were delivered to Bell at some time prior to September 1975. Bell recorded the deeds in September 1975.[5]
 
 
 25
 Raymond Bell died intestate in Indiana in 1981. (Fifth Am.Compl. at p 18.) The Property passed to Defendants Bell Heirs. They conveyed the Property in 1989 to Defendant Chicago Title & Trust Company, as Trustee ("CT & T"), (Fifth Am.Compl. at p 19), who then conveyed it to Defendant First Illinois Bank and Trust, as Trustee ("First Illinois"). (Id. at p 20.) First Illinois conveyed the Property to Defendant NBD as Trustee in February 1990. (Fifth Am.Compl. at p 21; Defs.' Mem.Supp. of Mot. for Summ. J., Aff. of Michael A. Bentcover at p 3.) In March 1990, Defendant NBD borrowed money from Defendant Harris Bank to develop the property and granted Defendant Harris Bank a mortgage interest in the Property.[6] (Fifth Am.Compl. at p 22.)
 
 
 26
 Plaintiffs apparently continued to be billed by Cook County until 1989 for the real estate taxes due on the Property. (Pls.' Resp. to Defs.' Mot. for Summ. J., Group Exh. B.) According to receipts and real estate tax bills submitted by Plaintiffs in response to Defendants' NBD and Harris Bank motion for summary judgment, Plaintiffs paid real estate taxes on the Property for the years 1974-75, and 1978-1989.[7] (Id.) Plaintiffs allege that they did not become aware of the fact that Bell had obtained the deeds and recorded them until late 1980 or early 1990. (Fifth Am.Compl. at p 28.)
 
 
 27
 Plaintiffs filed their initial complaint in October 1990. That complaint sought to quiet title and named CT & T, Harris Bank, and NBD as defendants. Plaintiffs filed a Second Amended Complaint on November 12, 1991, naming Mark Bell, Holly Mills, Raymond Belzeski, and Kirk Bell as Defendants. In that complaint, Plaintiffs sought to recover damages for the sale of the property rather than to quiet title.
 
 
 28
 The Defendants in the Second Amended Complaint sought summary judgment on four grounds: (1) the fact that the quitclaim deeds were unconditional on their face rendered the conveyance to Raymond Bell absolute at law; (2) no fraud claim existed against Raymond Bell because Plaintiffs dealt exclusively with Cosentino and hence Plaintiffs had no derivative claim against Raymond Bell's heirs; (3) any claim that Plaintiffs might have had was extinguished by the Indiana nonclaim statute; and (4) Plaintiffs' claim was barred by the Illinois statute of limitations. The Court denied the motion for summary judgment on the grounds that (1) the validity of the delivery of the deed was a material issue of fact; and (2) the Plaintiffs' due diligence in discovering the fraud was a material issue of fact in determining whether or not the running of the Illinois statute of limitations was tolled.
 
 
 29
 Plaintiffs filed a Fifth Amended Complaint in April of 1993. The Fifth Amended Complaint named as Defendants Raymond J. Belzeski, Mark Richardson Bell, Holly Mills, Kirk Daniel Bell (collectively, the "Bell Heirs"), Chicago Title & Trust Company, as Trustee, John J. Lag,[8] First Illinois Bank and Trust, as Trustee, Theodore A. Wynn,[9] Lawrence J. Oakford,[10] NBD Trust Company of Illinois, Harris Bank/Glencoe-Northbrook, N.A., and unknown owners. Count I of the Fifth Amended Complaint seeks damages of $75,000 against Defendants Bell Heirs. Count II apparently seeks to quiet title as against all titleholders in the chain of title subsequent to the Bell Heirs.[11]
 
 
 30
 Defendants NBD and Harris Bank filed a motion for summary judgment as to Count II of the Fifth Amended Complaint on July 30, 1993. They move for summary judgment on four grounds: (1) Plaintiffs' claim is barred by the Illinois Statute of Frauds; (2) Plaintiffs' claim is barred by laches; (3) Plaintiffs passed good title to Raymond Bell because the deeds are absolute as a matter of law; and (4) Defendants NBD and Harris Bank are protected as a matter of law as bona fide purchasers.
 
 
 31
 Defendants Bell Heirs filed a motion for summary judgment as to Count I of the Fifth Amended Complaint on July 23, 1993. They, like Defendants NBD and Harris Bank, move for summary judgment on statute of frauds and good title grounds. They also seek summary judgment on the grounds that (1) Plaintiffs' claim is barred by the nonclaim statute of the Indiana Probate Code; and (2) Count I is barred by the five-year Illinois Statute of Limitations.
 
 Analysis
 
 32
 For Defendants to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). If the nonmovant bears the burden of proof on a dispositive issue, "the nonmoving party [is required] to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)). The issue is "whether a proper jury question is presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
 
 
 33
 If a condition to the effectiveness of a deed does not appear on the face of such deed, the deed becomes absolute at law when delivered unless delivery is made in escrow to a third person. Loque v. Von Almen, 40 N.E.2d 73, 77 (Ill.1941). Under Illinois law, an escrow is established "when a deed is deposited by a grantor with a third person and that person is to deliver the deed to the grantee only upon the fulfillment of some condition." LaSalle Nat'l Bank v. Kissane, 516 N.E.2d 790, 792 (Ill.App.Ct.1987).
 
 
 34
 When the conveyance is contingent on the occurrence of some event, title is not conveyed when the deed is delivered into escrow. Fairbury Fed. Sav. and Loan Ass'n v. Bank of Ill, 462 N.E.2d 6, 9 (Ill.App.1984). Furthermore, no title is conveyed if there is an unauthorized delivery of the deed by the escrow agent to the grantee. Id. In other words, title does not pass to the grantee if the escrow agent delivers the deed to the grantee prior to the occurrence of the designated condition.
 
 
 35
 The parties here agree that the Miguels did not deliver the deeds directly to Bell, the grantee. The Miguels delivered them to Cosentino. As a result, "the general presumption in favor of unconditional delivery does not apply." (Mem.Op. and Order at 7, Miguel v. Belzeski, No. 90 C 6054 (N.D.Ill. July 13, 1993) (Plunkett, J.).) Thus, as we noted in our July 13, 1993 order, the validity of the conveyance to Bell turns on the issue of whether there was proper delivery of the deeds. (Id. at 10.) That issue in turn depends on whether or not an escrow was established when the Miguels delivered the deeds to Cosentino.
 
 
 36
 According to the Miguels, Cosentino was not to deliver the deeds to Bell unless the bond issued through Bell's efforts was forfeited. They claim that title did not transfer to Bell because the deed was delivered to Bell even though the required event--the forfeiture of the bond--never occurred.
 
 
 37
 Defendants argue that they are entitled to summary judgment on the issue of the validity of the conveyance to Bell on several grounds. They argue first that Plaintiffs' claim is barred by the Illinois Statute of Frauds, 740 ILCS 80/2. They argue alternatively that no valid escrow arrangement exists because Cosentino does not qualify under Illinois law as a third-party escrowee. Finally, they argue that the conveyance was valid because the deeds themselves are unambiguous and unconditional and are absolute as a matter of law in the absence of a valid escrow arrangement.
 
 
 38
 In order to defeat this portion of Defendants' motions for summary judgment, Plaintiffs must demonstrate that there is a genuine issue either with regard to the existence of an escrow or with regard to the ambiguous nature of the deeds themselves. With regard to the alleged escrow arrangement, Plaintiffs must show that there is a genuine issue (1) that the deed was delivered to an person who could qualify as a third-party escrowee under Illinois law; and (2) that delivery of the deed was subject to an extrinsic condition. Because Plaintiffs bear the burden of proof with regard to these issues, Plaintiffs may not rest on the pleadings but must by "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e).
 
 
 39
 In response to Defendants' motions, Plaintiffs argue that the deeds are ambiguous as a result of certain tax exemption stamps that were affixed on them. According to Plaintiffs
 
 
 40
 [t]he ambiguity is two-fold. First, although the deeds are for the same property, it is unclear whether the same exemption sections were applicable to each deed. Second, if paragraph c applies, then the deeds were not unconditional on their face because they were stated to "secure debt or other obligation."
 
 
 41
 Pls.' Resp. to Defs.' Mot. for Summ. J. at 6. Plaintiffs maintain, without citation to any statute or caselaw to support their argument, that the referenced sections of the Illinois Real Estate Transfer Tax Act and the Chicago Transaction Code are "incorporated into and must be interpreted as part of the plain language of the deeds as recorded." Id.
 
 
 42
 Plaintiffs have not demonstrated that there is a genuine issue of fact with regard to the nature of the deeds themselves. Three of the four stamps are legible, and reference exemptions based on the amount of consideration. One of the deeds, the one executed by Mr. Miguel, is stamped with consistent stamps. Plaintiffs have not offered any explanation as to why Bell might have referenced two different exemptions on the other deed when it conveyed the same piece of property.
 
 
 43
 Plaintiffs have not met their burden under Rule 56(e) with respect to the nature of the deeds. They did not produce evidence beyond their own allegations to support their contention that the deeds are ambiguous. As a result, they must demonstrate a genuine issue with regard to the existence of an escrow arrangement to withstand Defendants' motions for summary judgment on the issue of valid delivery.
 
 
 44
 Assuming that Cosentino qualifies as a valid third-party escrowee under Illinois law,[12] Plaintiffs must demonstrate the existence of a valid escrow arrangement in order to prevail at trial. The question raised by Defendants' motions is whether they must do so by producing some writing memorializing the arrangement.
 
 
 45
 Defendants maintain that, because Plaintiffs' claim revolves around the conveyance of land, any extrinsic condition or agreement must be in writing to be enforceable by Plaintiffs. According to Defendants, in the absence of a writing evidencing the alleged escrow arrangement between the Miguels and Cosentino the Court must look to the deeds alone.
 
 
 46
 Unfortunately for Plaintiffs, Illinois law requires that the escrow arrangement be evidenced by a writing. The Illinois statute of frauds provides that an action for the sale of land cannot be maintained unless the contract or some memorandum or note thereof is in writing, signed by the party to be charged. 740 ILCS 80/2 (Smith-Hurd 1993). According to the Supreme Court of Illinois, this requirement applies to escrow arrangements such as the one here.
 
 
 47
 In order that an instrument may operate as an escrow when delivered to one not a party to the instrument, to be delivered in turn, to a party to the instrument upon the performance of certain conditions, there must be a valid contract between the parties as to the subject-matter [sic] of the instrument.... [T]o meet the requirements of section 2 of the statute of frauds, no form of language is necessary, if only the intention can be gathered, and that any kind of writing, from a solemn deed down to mere hasty notes or memoranda in books, papers, or letters will suffice, but the writings, notes, or memoranda must contain on their face, or by reference to others, the names of the parties, vendor and vendee, a sufficiently clear and explicit description of the property to render it capable of being identified from other property of like kind, together with the terms, conditions (if any), and price to be paid or other consideration to be given, and such writing must be signed by the party to be charged....
 
 
 48
 Johnson v. Walden, 173 N.E. 790, 792 (Ill.1930).
 
 
 49
 Proof of an oral agreement conditioning the delivery of title and establishing an escrow arrangement is not enough. See, e.g., Hubbard v. Schumaker, 402 N.E.2d 857 (Ill.App.1980). In Hubbard, Plaintiff sought to impose a constructive trust on an interest in property that she had conveyed to her brother. She maintained that "she signed over her one-quarter interest to her brother so he could borrow money." Hubbard v. Schumaker, 402 N.E.2d at 859. She further alleged that he had orally promised to " 'make it right' for her." Id. at 859-860. The court held that any oral agreement to reconvey the property "would have been void under the Statute of Frauds." Id. at 861.
 
 
 50
 The situation here is analogous in all material respects. The deeds executed in favor of Bell do not indicate the existence of a condition. The deeds were delivered to the grantee. The conveyance of title allegedly was conditioned on the occurrence of a certain event, here, the forfeiture of the bond. Thus, according to the Illinois Supreme Court's decision in Hubbard, Plaintiffs can only prevail on their claim if they are able to prove the existence of some writing evidencing the alleged escrow arrangement with Cosentino and Bell. Even if Plaintiffs were able to prove the existence of an oral agreement, that would not be enough under the Statute of Frauds.
 
 
 51
 There are reasons for the Statute of Frauds requirement. Without such a rule governing conveyances of land, parties to such transactions could attempt to unravel them many years later by alleging the existence of an oral agreement contradicting the absolute language of the deed itself. The trier of fact would have absolutely no way of ascertaining the substance of the agreement.
 
 
 52
 The problem is well-illustrated here. The alleged oral agreement between the Miguels and Cosentino/Bell was entered into over eighteen years ago. Bell is long dead and Cosentino cannot be found. The deed may have been delivered solely to secure the bond--in which case it should have been returned to the Miguels when the bond was not forfeited--or it may have been delivered as part of the premium for the bond--in which case Bell was entitled to the property and rightfully recorded the deed. Without some sort of writing evidencing the agreement, there is simply no way for the Court or the trier of fact to know the truth.
 
 
 53
 The operative condition need not appear on the face of the deed to create a valid escrow. Because such a condition concerns the delivery of the deed, not the efficacy of the deed itself, it is immaterial whether the condition appears on the face of the deed or is contained in an extrinsic agreement. Tiffany, Real Property Sec. 1048 (3d ed. 1975). Delivery to a third party creates an exception to the parol evidence rule. Ballantine, "Delivery in Escrow and the Parol Evidence Rule," 29 Yale L.J. 826, 827 (1920). Thus, Plaintiffs may prove the existence of the condition, and hence, the existence of an escrow arrangement, by extrinsic evidence.
 
 
 54
 Nonetheless, Plaintiffs have not introduced the evidence necessary to defeat Defendants' motions for summary judgment. No writing of any sort evidencing the alleged escrow agreement has been produced in response to Defendants' motions. The deeds themselves cannot serve as the writing because they do not reference the condition. No affidavit, deposition testimony, or admission suggests that such writing exists.[13]
 
 Conclusion
 
 55
 Plaintiffs have not introduced the evidence necessary to demonstrate that there is an issue that must go to a jury. They have not raised a genuine issue with regard to the ambiguity of the deeds. Taken by themselves, the deeds appear absolute at law and do not support Plaintiffs' claim that the conveyance to Bell was invalid. Plaintiffs' claim thus depends on the existence of a written extrinsic agreement conditioning the delivery of the deed to Bell. While the uncontroverted evidence regarding the delivery to Cosentino does raise an issue regarding the existence of an escrow agreement, Plaintiffs have failed to designate specific facts that show that there is a genuine issue with regard to the existence of a writing evidencing that agreement. Plaintiffs' claim cannot stand.
 
 
 56
 Plaintiffs will no doubt feel that this result is harsh. Nonetheless, the Court is not free to disregard Illinois law, and under Illinois law an escrow agreement such as the one alleged here must be in writing to be enforceable. As Plaintiffs have produced no evidence that suggests that such a writing exists, Defendants' motions for summary judgment are hereby granted.[14]
 
 DATED: November 4, 1993
 
 
 [1]
 The district court's jurisdiction was conferred by 28 U.S.C. Sec. 1332(a)(1)
 
 
 [2]
 Additional background information is set forth in prior proceedings in this case reported at Miguel v. Belzeski, 797 F.Supp. 636 (N.D.Ill., 1992) as well as in the district court's Memorandum Opinion and Order granting summary judgment. Miguel v. Belzeski, 1993 WL 460847
 
 
 [3]
 The district court's Memorandum Opinion and Order dated November 4, 1993 and docketed November 5, 1993 granted summary judgment to some but not all defendants. Additional defendants were granted summary judgment on December 3, 1993 for the same reasons as those stated in the district court's November 4, 1993 opinion, and a Rule 58 Judgment was docketed on December 8, 1993. A Rule 59(e) Motion filed by the Miguels was stricken as untimely on January 19, 1994 and a notice of appeal was filed on February 17, 1994 (No. 94-1422). Upon subsequent consideration of jurisdictional memoranda filed by the parties and a motion to dismiss for lack of appellate jurisdiction, this court dismissed the Miguels' appeal as premature, it appearing that the district court's judgment did not dispose of the Miguels' claims against all defendants. In subsequent proceedings, the district court granted a motion to amend the December 8, 1993 judgment to include Chicago Title and Trust, and a Rule 58 Judgment was docketed on September 9, 1994. The Miguels' Motion to Reconsider was denied by the district court on October 5, 1994, and a notice of appeal was filed on October 11, 1994. Appellate jurisdiction is conferred by 29 U.S.C. Sec. 1291
 
 
 [4]
 740 ILCS 80/2 (Smith-Hurd 1993)
 
 
 [1]
 The Court does not, by this order, dismiss the Fifth Amended Complaint as to the remaining Defendants, namely, First Illinois Bank and Trust, as Trustee, Theodore A. Wynn and Lawrence J. Oakford, as beneficial owners of the First Illinois Trust, and unknown owners
 
 
 [2]
 The Property is located in Cook County, Illinois (Defs.' Rule 12(m) Stmt. p 3.) at 1512 West Diversey Avenue, Chicago, Illinois (Pls.' First Rule 12(n) Stmt. p 3.) At the time the deed was delivered to Cosentino, the Property was an unimproved vacant lot
 
 
 [3]
 Because the Property was held jointly by Mr. and Mrs. Miguel, they each executed a quitclaim deed to the Property
 
 
 [4]
 Plaintiffs do not offer an explanation of why the deeds were executed in favor of Bell rather than Cosentino when it was Cosentino who they approached for the bond
 
 
 [5]
 As noted in the Court's July 13, 1992 Order each of the recorded deeds have two exemption stamps signed by Raymond Bell on them, one indicating an exemption from state tax and one indicating an exemption from city tax (Mem.Op. and Order at 2-3 & n. 4, Miguel v. Belzeski, No. 90 C 6054 (N.D.Ill. July 13, 1992) (Plunkett, J.).)
 
 
 [6]
 Defendant NBD alleges that it has developed the Property extensively since acquiring it in 1990. (Bentcover Affidavit at p 7.) According to NBD, the Property was acquired by NBD in 1990 for approximately $97,500. (Id. at p 4.) NBD alleges that the Property currently has a fair market value of approximately $620,000. (Id. at p 7.)
 
 
 [7]
 According to those records, taxes for the periods of 1974-75 and 1978-84 were not paid by Plaintiffs when due, but were redeemed by Plaintiffs in January and February 1989. (Pls.' Resp. to Defs.' Mots. for Summ. J., Group Exh. B.) Plaintiffs allege that they also paid the real estate taxes on the Property for 1976-1977. The Court is unable to confirm that fact from the records submitted by Plaintiffs
 
 
 [8]
 Lag is named as the beneficial owner of Trust 1092665 held by Defendant CT & T
 
 
 [9]
 Wynn is named as beneficial owner of Trust 9529 held by Trustee First Illinois Bank and Trust
 
 
 [10]
 Oakford is named as beneficial owner of Trust 9529 held by Trustee First Illinois Bank and Trust
 
 
 [11]
 The complaint does not specify clearly the relief sought by Plaintiffs, but states that
 
 
 [25]
 Defendants unlawfully claim and have claimed title to said property by virtue of subsequent deeds and instruments executed and delivered at said times set forth above
 
 
 [26]
 The claims of defendants are invalid for the reasons that said deeds and trusts were based on ineffective instruments as said property was never legally delivered nor transferred to Raymond J. Bell; and thus, all subsequent transfers are of no effect
 
 
 [28]
 Plaintiffs have no adequate remedy at law as the subject matter of this action is unique real estate
 (Fifth Am.Compl. at paragraphs 25, 26, 28.)
 
 
 [12]
 Defendants argue that Cosentino does not qualify as a third party escrowee under Illinois law. Because we conclude that the Statute of Frauds bars Plaintiffs' claim regardless of Cosentino's qualifications as an escrowee, we need not reach that issue
 
 
 [13]
 Plaintiffs' Local Rule 12(n) statement contains a vague allegation that "[t]here were other documents executed by the Miguels regarding the transaction that is the subject of the Complaint; however, only copies of documents recorded in Cook County can be located." (Pls.' First Rule 12(n) Stmt. at p 15.) The statement does not specify the identify of the "other documents." It does not describe their contents. It does not indicate that the documents were signed by either Cosentino or Bell. Even if such a statement could be considered under Rule 56(e), it would be inadequate to raise a genuine issue of fact
 We note that it would not have been difficult for Plaintiffs to overcome the Statute of Frauds problem if in fact the necessary writing had existed. If the facts are as alleged (i.e., that the writing existed but had been lost), Plaintiffs could have submitted a sworn statement attesting to the fact that Bell had signed an agreement that provided that the deeds were only to be delivered if the bond were forfeited, but that the agreement was lost. While we express no judgment as to whether such evidence would have carried the day in front of a jury, it certainly would have been sufficient to show that there was a genuine issue for trial.
 
 
 [14]
 Because the Court concludes that Defendants' are entitled to summary judgment on Statute of Frauds grounds, the Court does not reach the issue of whether Plaintiffs' claim is barred by laches, the Illinois statute of limitations, or the nonclaim statute of the Indiana Probate Code, or the issue of whether Defendants NBD and Harris Bank are protected as bona fide purchasers