R. E. LAWRIE, Appellant,

v.

RISS & COMPANY, Inc., a corporation, Appellee.

No. 15749.

United States Court of Appeals Eighth Circuit.

Oct. 9, 1957.

not will, and the contingency is all the more apparent.

John T. Smith, (Gaylord Wilkins, Kansas City, Mo., on the brief), for appellant.

John B. Gage, Kansas City, Mo. (Laird P. Bowman and Gage, Hillix, Moore & Park, Kansas City, Mo., were with him on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

The federal jurisdiction in this case results from diversity of citizenship and the applicable law is that of Missouri.

It appears that in the year 1952 the Riss Company was obtaining its large insurance coverage with Lloyd's of London through its brokers Hansen and Rowland of Tacoma, Washington, but it was solicited through several months from the beginning of that year to transfer its insurance account from those brokers and to designate the plaintiff, who was a licensed insurance broker in Missouri, as the broker for the company to place insurance in the Lloyd's market. Mr. William C. Dannevik, a practicing lawyer and also Executive Vice President of the Riss Company, was in charge of the insurance program of the Riss Company involving expenditure of upwards of $200,000.00 per annum and was the duly authorized representative of the company with whom plaintiff carried on his solicitation. Mr. Dannevik told plaintiff that the company had some differences with its brokers and plaintiff was permitted to "examine the policies and other papers which Riss & Company had in their possession relating to the coverage which they had at that time—placed with Lloyd's of London." Among other things, plaintiff observed that a federal tax of four percent on premiums, which premiums aggregated over $290,-000.00, was being charged to and paid by the insured. Said payments appeared to him to be unusual and he formed the opinion that the four percent charge was an illegal exaction that could be recovered by the Riss Company. He told Mr. Dannevik that he noticed in examining the policies that the company had been charged four percent tax and that he believed that that was improper and that the company might be entitled to refund. Mr. Dannevik was at the same time having discussion with other brokers and, on consideration, came to the same conclusion himself.

Accordingly, as was shown by letters and telegrams in evidence, Mr. Dannevik, made demand for refund of the amount of the tax upon the brokers Hansen and Rowland which was unanswered and then wrote to what was called The Tribunal, Lloyd's of London, Lloyd's Building, London, England, explaining the claim for refund and stating a desire to submit the controversy to The Tribunal. Answer was received from the Secretary of Lloyd's Underwriters' Fire & Non-Marine Association, Lloyd's, Leadenhall Street, London, E.C. 3, to the effect that the matter should be handled by Lloyd's Underwriters' General Counsel in the United States and that Riss's letter was being passed to Messrs. Mendes & Mount for attention. Mendes & Mount, 27 William Street, New York, thereupon advised Riss that they represented Lloyd's in the matter and through their representation Hansen and Row-

land refunded the full amount of the four percent tax that had been paid to them by Riss, in the sum of $11,614.25, on March 2, 1954.

In the latter part of 1954, the plaintiff called Mr. Dannevik on the telephone and for the first time asserted a claim against the Riss Company for one half of the amount of the refund the company had received from Hansen and Rowland. On March 3, 1955, plaintiff brought this action.

His complaint contained the following allegations and prayer:

"3. That on or about June 10, 1952, the Plaintiff and Defendant entered into an agreement the substance of which is as follows:— Plaintiff in his conversations with the representative of Defendant discovered that, in the opinion of the Plaintiff, the Defendant was entitled to certain refunds or reimbursements because of and growing out of prior purchases of insurance from a firm known as Hansen & Rowland and said amounts due Defendant represented taxes collected by the said Hansen and Rowland. The Plaintiff made known to the Defendant his opinion regarding the monies so due the Defendant and asked the Defendant what amount it would pay to the Plaintiff in the event that further investigation by Plaintiff and his staff confirmed the opinion of the Plaintiff, and if by reason of said investigation, research and disclosure to the Defendant of the result thereof, Defendant should be successful in collecting any monies due from said Hansen & Rowland. The Defendant then and there told Plaintiff that if the investigation and research of Plaintiff and his staff confirmed the opinion of the Plaintiff in regard to the monies due and Defendant recovered any money as a result thereof, the Defendant would pay to the Plaintiff a sum equal to fifty percent (50%) of any amounts so col-lected. Plaintiff agreed to the terms offered by Defendant aforesaid.

"4. That thereafter the said agreement was confirmed in writing by both Plaintiff and Defendant but the written instrument is lost, or at least cannot be located by Plaintiff at this time.

"5. That pursuant to the aforementioned agreement, Plaintiff did make investigation, and did have his staff make research the result of which did confirm the opinion of the Plaintiff. The Plaintiff in full performance of his part of the contract furnished to the Defendant all the information necessary for Defendant to recover the money due it by reason of its dealings with the Hansen & Rowland agency and Defendant thereafter acting upon the information so furnished did recover the sum of approximately Fourteen Thousand Dollars ($14,000.00).

"6. That Defendant has wholly failed, refused and neglected to perform its part of the contract, to wit, the payment to the Plaintiff of the sum of Seven Thousand Dollars ($7,000.00), representing an amount equal to fifty percent (50%) of the Fourteen Thousand Dollars ($14,-000.00) collected by Defendant as provided by the contract.

"7. That Plaintiff has demanded from Defendant the amount due on several different occasions but the same still remains due and unpaid.

"Wherefore, the premises considered, Plaintiff prays judgment against the Defendant in the amount of Seven Thousand Dollars ($7,000.-00), together with his cost expended in this case."

The defendant denied making the alleged agreement and denied that there ever was any such writing as alleged. It set up as affirmative defense that the plaintiff was its broker-agent at the date of the alleged agreement and as such owed the duty of full disclosure of all

known facts to him within the scope of his agency; also that the alleged agreement would be unenforceable under the applicable laws of Missouri as champertous.

The case was tried to the court without a jury and the judgment was for dismissal of the action accompanied by written opinion of the court (not published).

The court found the issue generally in favor of the defendant and against the plaintiff. It further found specifically that plaintiff had failed to sustain the burden of proof to establish any binding contract existing between the plaintiff and the defendant as set forth in the complaint.

The appellant contends for reversal of the judgment that the court erred in finding that there was no contract between the plaintiff and the defendant.

The only witnesses who testified on the issue at the trial were the plaintiff who asserted that the agreement was entered into as alleged in the complaint and the person plaintiff dealt with, namely the Executive Vice President of the Riss Company, Mr. Dannevik, who positively denied it. Plaintiff swore he had a writing by Mr. Dannevik evidencing the alleged agreement and a recording of a telephone conversation with Mr. Dannevik confirming it and Mr. Dannevik said there was no such writing and no such telephone conversation. Neither writing nor recording was produced. It was not claimed that there were any witnesses to the conversations on which plaintiff relied. Seven letters and four telegrams were received in evidence and have been considered. They show the steps by which collection from the brokers was accomplished, but none tends to corroborate plaintiff's account of an agreement entered into by the parties here. The opinion of the trial court reflects that the opportunity the court had to observe the witnesses was availed of and the evidence carefully studied.

Plaintiff's attempt to establish his claim was bottomed on a telephone conversation he had with Mr. Dannevik, in the course of his solicitation to get the Riss insurance business away from Hansen and Rowland, in which he said to Mr. Dannevik, "If I can tell you where you can find $10,000.00 will you give me half of it?" To which Mr. Dannevik jokingly replied, "That is a good deal, I will go for that any day", and then asked what he had in mind. From that there followed a discussion about Hansen and Rowland's charge of the four percent tax on the premiums.

Plaintiff's testimony was carried on at considerable length and into many details, sufficiently to enable the experienced trial court to make a fair appraisal of its credibility. In its important particulars it was uncorroborated and it was flatly contradicted by Mr. Dannevik. The fundamental issue of whether or not there was a meeting of minds between Mr. Dannevik and the plaintiff and a contract on plaintiff's part to perform service and on defendant's part to pay for it, as alleged in the complaint, was a question of fact which it was the function of the trial court to determine. The court made the determination against the plaintiff upon substantial and persuasive evidence. The finding of the court was not clearly erroneous (Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.) and the judgment should be and is,

Affirmed.