1998 SD 35

**Ali SABHARI and Sabhari Enterprises, Inc., Plaintiffs and Appellants,**

v.

**Mahmoud SAPARI; Farris Properties, Inc., a South Dakota corporation, Defendants and Appellees.**

**Nos. 20177, 20198.**

Supreme Court of South Dakota.

Argued Feb. 19, 1998.

Decided April 8, 1998.

---

Thomas W. Clayton Sioux Falls, for plaintiffs and appellants.

Thomas K. Wilka of Hagen, Wilka & Archer, Sioux Falls, for defendants and appellees.

GILBERTSON, Justice.

[¶ 1]This appeal arises out of three real estate transfers from Ali Sabhari and Sabhari Enterprises, Inc. (Ali) to Mahmoud Sapari (Matt) and Farris Properties, Inc.[1] Ali appeals from the trial court's finding that Ali failed to meet his burden of proof in his claim of fraud and constructive trust based on alleged oral promises by Matt to convey the three properties back to Ali.[2] Ali also appeals the trial court's denial of Ali's motion to conduct a telephonic interview.  We affirm.[3]

## FACTS

[¶ 2] In 1988, Ali's younger brother, Matt came to Sioux Falls, South Dakota to attend college and has since made it his home and has become a naturalized citizen.  Ali is an Iranian citizen who had owned and operated

---

1.  The claims by Sabhari Enterprises, Inc. against Farris Properties, Inc. were dismissed with prejudice and are not part of this appeal.

2.  Counsel on appeal for Ali did not represent him at trial.

3.  Matt has filed a notice of review seeking to set aside a portion of the trial court's final order which found that a $50,000 loan from Ali to Matt was "collectible, due in full with interest, and had not been partially satisfied[.]"  We will not address this issue because Matt failed to brief the argument.  "An assignment of error not briefed and argued is deemed abandoned."  *State v. Macy*, 403 N.W.2d 743, 745 (S.D.1987) (citing *Graham v. State*, 328 N.W.2d 254 (S.D.1982)).

a successful home remodeling and wedding supply business in Kuwait before coming to the United States to live with Matt. Ali's familiarity with the English language was disputed at trial but Ali testified that he had taken several years of English classes in high school and college.

[¶ 3] In 1992 Ali visited Sioux Falls and Matt showed him some real estate investment properties. In December, 1992, Ali loaned Matt $50,000 so Matt could buy into Farris Properties (Farris). Ali returned to Kuwait. Matt and Tom Scholten, a real estate agent, were the sole shareholders in Farris and Matt later became president.

[¶ 4] In November of 1993, Ali transferred $465,000 to Norwest Bank in Sioux Falls and returned to South Dakota to live with Matt. Shortly thereafter, Ali began to purchase real estate in the Sioux Falls area which included the three parcels at issue in this appeal. These properties will be referred to as the 57th Street property, the 10th Street property, and the Minnesota Avenue property. Ali subsequently transferred these three properties to Matt; allegedly as part of two separate oral agreements where Matt was to convey the properties back to Ali a short time later. Ali alleged that Matt and he entered into an oral agreement where Matt would reconvey the 57th Street Property after Matt received a loan. Ali also alleged that he entered into a second oral agreement with Matt where Matt agreed to reconvey the 10th Street and Minnesota Avenue properties because Ali was fearful that this property could have been reached as part of a potential judgment. These alleged oral agreements are set forth in detail below.

[¶ 5] Ali has claimed that he did not receive consideration for any of the three properties transferred to Matt, even though each of the purchase agreements indicate that nearly all of the total purchase prices had been paid. Matt conceded that he did not pay the $87,000 at closing for the 57th Street property, but argued that this money had previously been exchanged as an offset for his share of his inheritance from his father's overseas estate, which had allegedly been withheld by Ali. Shirley Thoelke (Thoelke), the First Dakota Title Company employee who had prepared the settlement statements, purchase agreement, and warranty deed, testified that Ali and Matt informed her that the $87,000 earnest money had previously exchanged hands.

[¶ 6] Ali denied Matt's offset claim and contended that he transferred the 57th Street property to Matt as part of an oral agreement so that Matt would have sufficient collateral to obtain a loan for Ali. Ali had not established an adequate credit history at that time and was not a United States citizen. Ali claimed that if Matt's loan was approved Matt would then give the money to Ali. If the loan was not approved then Matt would transfer the property back to Ali. Ali has conceded in his complaint that the deed is "absolute in form" and offered no writing or document as evidence that such an agreement to reconvey ever existed. Furthermore, Thoelke did not remember anything concerning Ali's claim that Matt agreed to reconvey the property.

[¶ 7] On November 9, 1994, Ali and Matt signed a purchase agreement for the transfer of Minnesota Avenue and 10th Street properties for $60,000 each. In the purchase agreement Ali acknowledged that he had received the $120,000 purchase price for the properties. Ali did not consult an attorney and the transfer closed November 10, 1994. Ali claimed that although the purchase agreement and seller's settlement statement indicated that he received the $120,000, he did not receive any consideration because of Matt's misrepresentations concerning Ali's part ownership interest in an incorporated Minnesota restaurant. Ali alleged Matt told Ali that Ali's personal assets were in danger of being reached if an employee of the Minnesota restaurant corporation succeeded in a sexual harassment suit. Ali claimed that Matt would transfer the properties back at Ali's request after his assets could no longer

be reached by a potential judgment.[4] Ali claimed that he completed the transfer in ignorance of the benefits of corporate limited liability. The threatened suit was never filed and Ali claimed that he demanded that Matt reconvey the 10th Street and Minnesota Avenue properties. The purchase agreement does not mention any sort of agreement to reconvey these properties back to Ali.

[¶ 8] Tammy Waugh (Waugh), an escrow closer at First Dakota Title Company, testified that she closed the 10th Street and Minnesota Avenue transaction and that the information contained in the settlement statements, purchase agreement, and warranty deed were based upon instructions given by Ali and Matt. Waugh further testified that Matt did not tender a closing check for the purchase price but the reference to the $120,000 payment in the documents was inserted at the joint direction of Ali and Matt. Waugh recalled no agreement that would require Matt to later reconvey the properties back to Ali. Matt's friend, Lawrence Ramadan (Ramadan), and Furat Hussain, another part owner of the Minnesota restaurant, testified that Matt had told them of the transfer plan to protect Ali's assets. Ramadan, however, subsequently contradicted his testimony by testifying on cross-examination that he, had previously admitted to counsel that he had never heard any such conversation and was not aware of any agreement where Matt would reconvey the properties back to Ali. The trial court found that Ali did not meet his burden in establishing fraud and even if there was such an agreement, it would be unenforceable as an attempt to defraud creditors.

[¶ 9] Matt denied Ali's claims of an oral agreement to reconvey the 10th Street and Minnesota Avenue properties after the sexual harassment suit was no longer an issue

and testified that Ali received full consideration for the transfer when their mother in Kuwait withdrew $120,000 in cash and physically presented that amount to Ali's former wife in Kuwait. Matt claimed that his mother could not simply send him a $120,000 check because, as an Iranian citizen, she was prohibited from having a checking account due to Kuwait's banking laws. Matt claimed the transaction was completed in this manner as a matter of convenience so as to avoid a complicated overseas transaction. Matt offered no documentary evidence to support his claim but Waugh recalled a conversation with Matt and Ali that "the money [$120,000] was to come from ... Kuwait, and it was to come from a relative...." Abdul Sapari (Abdul) is a younger brother to Ali and older than Matt. Abdul testified that he was present when Ali and Matt had discussed their mother transferring the $120,000 purchase price to Ali's former wife.

[¶ 10]. In March 1995, Ali brought suit alleging: Matt had made fraudulent representations which caused Ali to transfer the 10th Street, Minnesota Avenue, and 57th Street properties to Matt; as a result of the oral agreements Matt holds the properties as constructive trustee; breach of contract [5] and a claim for punitive damages. After a court trial, the trial court ruled against Ali on all claims except for the breach of contract claim.

[¶ 11] One aspect of this appeal relates to the trial court's handling of a telephonic conversation with the parties mother, Fatma Hussain, who was living in Kuwait. At the beginning of the trial, the trial court denied Ali's motion to permit the telephonic testimony of their mother and Ali's former wife. After the parties rested, the trial court could not determine which brother was credible and raised the issue of the mother's testimo-

---

4. Ali acknowledged in the purchase agreement that he "has complied with, and is not in violation of, applicable ... state ... laws and regulations" and that there is no "suit, action, arbitration, or legal, ... or other proceeding" pending or "threatened against or affecting Seller's interest in the operation of the property."

5. Ali loaned Matt $50,000 in December 1992 which was memorialized in a promissory note written in Arabic. The trial court concluded that Matt did owe Ali the $50,000. Matt filed a notice of review on this issue but we need not consider it. See n. 1.

ny sua sponte in order to find out whether the family had a sizable estate and whether the mother transferred the $120,000 to Ali's former wife. The trial court, with the aid of an interpreter in Sioux Falls, had a telephonic conversation with mother in Iran. The trial court asked the mother whether she would be coming to the United States so she could testify in the case. The mother told the trial court that she was planning on coming to the United States in six to eight months, did not want to have to pick between her two sons, and that the proceedings should be delayed so she could attempt a reconciliation between her sons. The trial court agreed to delay a decision for thirty days. The brothers did not reconcile and the mother did not arrive in the United States, so the trial court entered its decision finding that Ali did not meet his burden of proof on any of his claims except for breach of contract. Ali appeals raising the following issues for our review:

1. Whether the trial court erred in finding that Ali failed to sustain his burden of proving that Matt had defrauded him.

2. Whether the trial court erred in conducting a telephonic examination of a witness by not allowing Ali the opportunity to examine her.

3. Whether the trial court abused its discretion in denying Ali's motion at final argument to conduct a telephonic examination of a witness.

## STANDARD OF REVIEW

[¶ 12] Our standard of review is well settled:

[W]e review a trial court's findings of fact under the clearly erroneous standard. *Jasper v. Smith*, 540 N.W.2d 399, 401 (S.D. 1995) (citing *Cordell v. Codington County*, 526 N.W.2d 115, 116 (S.D.1994)). Under

this standard, we will not disturb the court's findings unless we are firmly and definitely convinced, after a review of the entire evidence, a mistake has been made. *Id.* We review a trial court's conclusions of law under a de novo standard. *Id.* Under a de novo review, we give no deference to the trial court's conclusions of law. *Id.*

*Landstrom v. Shaver*, 1997 SD 25, ¶ 37, 561 N.W.2d 1, 7. "Questions of fraud and deceit are generally questions of fact and ... whether a party relied on the alleged fraud to its detriment is a fact question for the jury." *Dede v. Rushmore Nat. Life Ins. Co.*, 470 N.W.2d 256, 259 (S.D.1991) (citing *McKinney v. Pioneer Life Ins. Co.*, 465 N.W.2d 192 (S.D.1991); *Laber v. Koch*, 383 N.W.2d 490 (S.D.1986)).

## ANALYSIS AND DECISION

[¶ 13] **1. Whether the trial court erred in finding that Ali failed to sustain his burden of proving that Matt had defrauded him.**

[¶ 14] The closing statement for the 57th Street property indicates that Matt had paid Ali earnest money of $87,000 out of the total $90,000 purchase price. The purchase agreement for the Minnesota Avenue and 10th Street properties indicates that Matt paid $120,000 in earnest money. "A written instrument is presumptive evidence of a consideration[,]" (SDCL 53-6-3) and "[t]he burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it" (SDCL 53-6-4). *Kahler, Inc. v. Weiss*, 539 N.W.2d 86, 91 (S.D.1995). Therefore, Ali had the burden of showing that he did not receive consideration for any of the properties at issue.[6] The trial court noted that Ali had the opportunity but failed to preserve his

---

6. Ali, in his reply brief, attempts to shift this burden to Matt claiming that under the "adverse inference rule," Matt should have produced physical evidence of the inheritance he was owed and the alleged transfer from their mother to Ali's former wife. The adverse inference rule "states that if a party has documentary evidence under its control, failure to introduce that documentary evidence at trial justifies the inference that the records of such a party will not support that party's claim." *Matters v. Custer County*, 538 N.W.2d 533, 536 (S.D.1995). We find Ali's claim that Matt had the ability to produce such documents unpersuasive. In *Matters*, this Court

former wife's testimony, while she was visiting Minnesota while the suit was pending, as to whether or not she had received the $120,000 for the Minnesota Avenue and 10th Street properties.

[¶ 15] Ali has failed to establish the existence of the alleged oral agreements which serve as the basis for his fraud claim. A claim for fraud is generally a question of fact for the fact finder. *Tri–State Refining and Inv. Co. Inc. v. Apaloosa Co.*, 431 N.W.2d 311, 314 (S.D.1988) (citation omitted). The trial judge, as fact finder in this action, noted that Ali's testimony at trial concerning the alleged agreement, that Matt would return the 57th street property if he was unable to get the loan, was different than that alleged in the complaint.[7] Furthermore, the evidence contained in the record is insufficient to show the required degree of certainty necessary to establish a valid oral agreement for the transfer of any of the three properties. *Werner, v. Norwest Bank South Dakota N.A.*, 499 N.W.2d 138, 141 (S.D.1993) (concluding that summary judgment is proper "[w]here there is no showing that the terms of an alleged oral agreement were ever settled or agreed upon[.]"). *Cf. In re Gosmire's Estate*, 331 N.W.2d 562 (S.D.1983) (affirming the trial court because sufficient evidence of an oral agreement existed which included the testimony of "[s]everal friends, neighbors, and business acquaintances of [the] decedent [who] testified affirming decedent's intention to convey his farm").

[¶ 16] The written purchase agreements at issue clearly and unambigu-ously state that Ali had received the consideration he now claims he did not. Neither party has claimed the purchase agreements were ambiguous. However, parol evidence may be considered when a plaintiff seeks to establish fraud as a ground for rescinding the contract. *Baker v. Jewell*, 77 S.D. 573, 577, 96 N.W.2d 299, 303 (1959). "Clear and convincing evidence is required in order to justify setting a written contract aside and holding it abandoned or substituted by subsequent parol evidence or contract." *Haggar v. Olfert*, 387 N.W.2d 45 (S.D.1986). Even in light of the parol evidence in this case, there is still no method to determine what were the specific terms of the alleged oral agreement. This Court has required that "there must be some definite terms for the court to determine what was agreed to." *Garrett v. BankWest Inc.*, 459 N.W.2d 833, 840 n. 6 (S.D. 1990).

[¶ 17] Ali supports his fraud claims with this Courts holdings in *Tri–State*, 431 N.W.2d at 311, and *Brandriet v. Norwest Bank*, 499 N.W.2d 613, 616 (S.D.1993). Unlike the case presently before this Court, the records in both *Brandriet* and *Tri–State* contained sufficient evidence for the trier of fact to find fraud. At its core, fraud requires a "representation made as a statement of fact, which was untrue by the party making it, or else recklessly made." *Brandriet*, 499 N.W.2d at 616 (citations omitted). The trial court, after considering the lack of physical evidence that Matt made fraudulent misrepresentations to Ali concerning any of the properties at issue and after making its credibility determination, concluded that Ali did

stated that applying the adverse interest rule "may not be wholly appropriate when there is no evidence that [the document] was within the County's power to recover and produce." *Id.* In addition to *Matters*, Ali relies upon *Klinker v. Beach*, 1996 SD 56, ¶ 15, 547 N.W.2d 572, 576 n. 2, which is easily distinguished from the present case. In *Klinker*, the adverse inference rule was impliedly mentioned and used against a *plaintiff* when this Court assumed that since plaintiff did not offer her purchase agreement in support of her claim of fraudulent misrepresentations, the document would not provide support necessary to meet her burden and avoid summary judgment. *Id.*

Here Ali made no showing as to what, if any documents are involved in passing property by inheritance in Kuwait, or that Matt in the United States had an ability to produce the documents if they existed in the first place.

7. Ali alleged in his complaint that Matt represented that after "he obtained the loan [Matt] would reconvey the property to Ali." Ali contradicted this allegation by testifying that Matt would keep the 57th Street property if Matt obtained the loan, but because he did not, Ali believed he was entitled to the return of the property.

not meet his burden of establishing fraud by a preponderance of the evidence. The case turns on proof and credibility and we are not "firmly and definitely convinced, after a review of the entire evidence, a mistake has been made." *Landstrom*, 1997 SD 25, ¶ 37, 561 N.W.2d 1, 7.

[¶ 18] The trial court also noted that even if Ali had met his burden of establishing the alleged oral agreements, such oral agreements would be unenforceable due to the statute of frauds. SDCL 53–8–2.[8] Although Ali challenges this as error, we would point out there is sufficient evidence in the record to support the trial court's determination that Ali failed to establish fraud through the alleged oral agreements.[9]

[¶ 19] Ali next claims that there existed a confidential relationship between Matt and himself at the time of the property transfers "because [Matt] had lived in the United States for a longer period of time, had a better understanding of the English language, and was trusted by [Ali]." As we have concluded that Ali has failed to meet his burden of establishing the alleged oral agreements to reconvey the properties, we need not address in great detail the issue of whether a confidential relationship existed.

[¶ 20] A confidential relationship exists "whenever there is trust and confidence, regardless of its origin." *Brandriet*, 499 N.W.2d at 617 (citing *Hyde v. Hyde*, 78 S.D. 176, 186, 99 N.W.2d 788, 793 (1959)). "In some instances, as between attorney and client ... the relation is said to be confidential as a matter of law. However, the existence of such a relationship as between parent and child is a question of fact to be determined from the evidence." *Hyde*, 78 S.D. at 186, 99 N.W.2d at 793. The relationship between siblings is analytically similar to the relationship between a parent and

---

8. SDCL 53–8–2 provides in part:

   The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:

   ...

   (3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one year. However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof[.]

9. Ali also claims in his brief that the statute of frauds is inapplicable because the 57th Street property was to be returned if Matt was unable to obtain a loan. Ali contends that SDCL 53–8–2(3) only applies to the transfer of real estate for more than one year and since Matt was to reconvey the property in less than one year, the statute of frauds does not apply. We disagree.

   [A] broad rule has been laid down that contracts concerning lands or interests in lands are not within the purview of the provision of the statute relating to contracts not to be performed within a year, [SDCL 53–8–2(1)] for it was the intention of the legislature to deal with such contracts under the special provision of the statute [SDCL 53–8–2(3)] relating to the subject of realty and the provision relating to contracts for the sale of land, and therefore, the subject matter of such contracts is not within the purview of the one-year clause.

72 Am.Jur.2d *Statute of Frauds* § 26 (1974) (collecting cases). A plain reading of SDCL 53–8–2 makes clear that the one year performance provision of sub (1) does not apply to real estate transactions under sub (3).

Furthermore, the purpose of the statute of frauds writing requirement is to remove the exact type of uncertainty that is present in Ali's oral agreement claim by providing written evidence of an enforceable obligation. 72 Am. Jur.2d *Statute of Frauds* § 285. Even if we were to factually accept Ali's claim that Matt agreed to reconvey the property if the loan was rejected, the statute of frauds would still prohibit enforcement. *Hubbard v. Schumaker*, 82 Ill.App.3d 476, 37 Ill.Dec. 855, 859, 402 N.E.2d 857, 861 (1980) (stating plaintiff's claim that she had transferred her interest in real property to her brother so he could borrow money after alleged oral agreement that he would reconvey after loan was secured would be void under the statute of frauds).

The basis of Ali's claim is that he was defrauded by Matt into transferring his property. Ali is correct in his assertion that the statute of frauds may not be used as a shield for fraud in an oral contract concerning real property. However, Ali's fraud claim comes down to a question of credibility and proof as to the existence of the alleged agreement. The trial court found Ali to be a willing participant in the transfer scheme to fraudulently obtain a loan and not an innocent victim. The trial court did not find Ali or Matt particularly credible so it was bound to rely on the proof before it in deciding no agreement existed.

child. *Id.* Thus, whether a confidential relationship existed presents a question of fact. *Id.* The trial court specifically found that no confidential relationship existed after determining that Ali was a "sophisticated businessman" who had financial success in both Kuwait and the United States. Ali's claim of ignorance concerning the English language and American business matters is not persuasive as he had several years of English language education and, without Matt's assistance, had successfully formed business corporations in South Dakota, Minnesota, and had participated in a variety of real estate transactions in Sioux Falls prior to the transactions at issue in this case. Therefore, we are not firmly and definitely convinced that the trial court made a mistake by failing to find a confidential relationship.

[¶ 21] **2. Whether the trial court erred in conducting a telephonic examination of a witness by not allowing Ali the opportunity to examine her.**

[¶ 22] Matt's counsel made several objections prior to the taking of mother's telephonic testimony from Iran. Matt's counsel maintained the following grounds as a basis for his objection: the court could not make an accurate identity determination; because the trial judge would be communicating through an interpreter he could not make a credibility determination; and that the Convention of Taking Evidence Abroad in Civil or Commercial Matters prohibited the taking of testimony by telephone to a witness in Iran.

[¶ 23] Despite Matt's counsel's objections, the trial court exercised its discretion by contacting mother in Iran. *Williams v. Williams,* 425 N.W.2d 390 (S.D.1988) (citing *Haugen v. Haugen,* 82 Wis.2d 411, 262 N.W.2d 769 (1978); SDCL 19–14–26 and 19–14–27). "The court may, on its own motion

or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." SDCL 19–14–26 (Fed.R.Evid. 614(a)). "The court may interrogate witnesses, whether called by itself or by a party. This power shall be used sparingly and only when the interests of justice require." SDCL 19–14–27 (Fed. R.Evid. 614(b)).[10]

[¶ 24] After examination of the transcripts of the conversation we conclude that the trial court did not abuse its discretion. The record indicates that the trial court originally intended to receive mother's telephonic testimony. However, after several preliminary questions but before any substantial questioning began, the trial court granted mother's request that a ruling be delayed for at least thirty days so she could attempt a reconciliation between Ali and Matt. The trial court then administered the oath, through the interpreter, to the mother as to what she had previously stated.

[¶ 25] It is well established that a party has the right to cross-examine witnesses who are called upon to give testimony. SDCL 19–14–26. The trial court did not permit either party to examine their mother during the conversation. The trial court did not take substantive testimony of the mother. Ali's counsel admitted as much at the final argument before the trial court when he agreed that her testimony was inconclusive and that the trial judge did not ask any substantive questions. The trial court merely asked preliminary questions to determine whether it would permit her to testify. The trial court did not assume the role of advocate. After the conversation had ended and the trial court granted mother's request for a delay, the trial court made it clear that it would not rely on its conversation with mother:

This is the last word on this issue. [Mother] is either going to be here or she is not.

10. Fed.R.Evid. 614(b) advisory committee's note provides:

The authority of the judge to question witnesses is also well established. (citations omitted). The authority is, of course, abused when the judge abandons his proper role and as-

sumes that of advocate, but the manner in which interrogation should be conducted and the proper extent of its exercise are not susceptible of formulation in a rule. The omission in no sense precludes courts of review from continuing to reverse for abuse.

If she is here, she's either going to [persuade her sons to reconcile] or else she is going to appear in my court and give testimony, and I'll reach a decision. *If she is not here, I will decide the case based on what I have before me.*

(Emphasis added). The mother did not come to the United States and the trial court kept its word when it decided the case on the evidence it had before it and without reference to the conversation with mother. Accordingly, we hold the trial court did not abuse its discretion.

[¶ 26] **3. Whether the trial court abused its discretion in denying Ali's motion at final argument to conduct a telephonic examination of a witness.**

[¶ 27] Just prior to final argument, Ali's counsel made another motion to reopen the evidence and conduct a telephonic examination of mother. This motion came nearly four months after trial which was three months after the deadline the trial court had established to receive mother's testimony.

> Trial court rulings on motions to reopen civil cases to permit additional evidence are reviewed for abuse of discretion. While the particular criteria that guide a trial court's decision to reopen are necessarily flexible and case-specific, it is generally understood that a trial court abuses its discretion if its refusal to reopen works an "injustice" in the particular circumstances.

*Rivera–Flores v. Puerto Rico Tele. Co.,* 64 F.3d 742, 746 (1st Cir.1995) (citations omitted).

[¶ 28] The trial court, sitting as fact finder, denied Ali's motion after concluding that speaking with mother again would not be helpful or meaningful. SDCL 19–14–18(1) is based upon Fed.R.Evid. 611(a) and provides in part that:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to
>
> (1) make the interrogation and presentation effective for the ascertainment of the truth,
>
> (2) avoid needless consumption of time[.]

[¶ 29] Ali supports his claim that the trial court abused its discretion by not reopening the case so he could examine his mother with *United States v. Simtob,* 901 F.2d 799 (9th Cir.1991). *Simtob* is distinguishable because the trail court in a criminal jury trial was held to have erred prior to final argument when it failed to listen to a tape recording of a government witness who allegedly perjured himself. *Id.* In *Simtob,* several months did not pass between the close of the evidence and final arguments. Furthermore, mother is beyond the reach of the trial court to compel her attendance at trial.[11] To the contrary, in *Simtob,* the trial court refused to reopen the case to examine competent evidence before it. The trial court here may have had the discretion to take mother's testimony telephonically but was apparently dissatisfied with such a method after the previous conversation. In short, based upon the trial court's comments, it is reasonable to infer that the trial court did not feel that the manner of obtaining mother's testimony would be helpful in ascertaining the truth. SDCL 19–14–18. Additionally, until the final argument stage, Ali made no attempt to secure the testimony of mother after it became obvious that she would not be physically testifying in the case. Under these facts, we hold the trial court did not abuse its discretion in denying Ali's request to reopen the evidence.

[¶ 30] We find Ali's additional arguments to be without merit and therefore affirm the trial court.

---

11. Ali has failed to suggest any means by which the trial court could compel mother's testimony. It is fundamental that a state court could not issue a subpoena directing Mother to testify in this matter as this would be an "attempted exercise of state power within the territory of the foreign state, an intrusion impossible in legal theory and in international understanding." J. Wigmore, *Evidence* § 2195c, at 101 (McNaughton rev. ed. 1961).

Furthermore, this Court takes judicial notice that the United States does not even have diplomatic relations with Iran.

[¶ 31] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

