2001 SD 33

**Garry W. JACOBSON, Plaintiff and Appellee,**

v.

**Jeffrey L. GULBRANSEN and Carol L. Gulbransen, Defendants and Appellants.**

**Nos. 21266, 21289.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 23, 2000.

Decided March 14, 2001.

Steven J. Oberg and Robert Gusinsky of Lynn, Jackson, Shultz & Lebrun, Rapid City, SD, Attorneys for plaintiff and appellee.

Frank Driscoll and Michael V. Wheeler of DeMersseman Jensen, Rapid City, SD, Attorneys for defendants and appellants.

LEE D. ANDERSON, Circuit Judge.

[¶ 1.] Jeff and Carol Gulbransen (Gulbransens) appeal from a judgment in a civil action tried to the court. The trial court concluded that there was an enforceable agreement between Gulbransens and Garry Jacobson (Jacobson) for the sale of land and ordered Gulbransens to convey the land to Jacobson. On appeal, Gulbransens contend that there was no agreement between the parties or, alternatively, that

the statute of frauds bars enforcement of the agreement. We affirm.

## FACTS

[¶ 2.] Jacobson and Gulbransens are landowners in the Black Hills of South Dakota. They own land abutting on the south and north sides, respectively, of a parcel of land outside of Keystone, South Dakota that once belonged to the United States Forest Service. The Forest Service sold the property to Gulbransens in July 1997 in accordance with 16 USC § 521(c) *et seq*. These provisions permit the sale of small, difficult to manage parcels of land when the sale is in the public interest. The Forest Service conditioned the sale of any such parcel upon approval by all contiguous landowners.

[¶ 3.] Mr. Gulbransen contacted the Forest Service in 1993 after learning of the possibility of purchasing the parcel at issue in this appeal. Told that all adjoining landowners would have to approve the sale, Gulbransen contacted his immediate neighbors while the Forest Service contacted other adjoining landowners including Jacobson and John Kinkead. Jacobson objected to the sale and reported his objections to the Forest Service. Jacobson had used two existing roads across the parcel for access to a remote portion of his own property and as an alternate egress route in case of a forest fire. To preserve these uses, Jacobson preferred that the land not be sold or developed.

[¶ 4.] The Forest Service informed Gulbransens of Jacobson's objections and directed that the objections be resolved before Gulbransens' application to purchase the land would be considered. Gulbransens were also informed that, unless the objections were resolved before March 31, 1994, the District Ranger would recommend to the Forest Supervisor that the land not be sold.

[¶ 5.] Gulbransen arranged a meeting with Jacobson and Kinkead to discuss their objections. At that meeting, he showed them a rough topographical map

the Forest Service had given to him that depicted the area in question. The three men discussed the proposed sale and which piece of the parcel of land each of them would want if the sale took place. Asked to identify the piece he wanted, Jacobson pointed out a window of Gulbransen's house that faced south and indicated that was the land he wanted. Gulbransen mentioned that he and his wife wanted the five acres nearest their land and also mentioned their concerns about financing the purchase of such a large parcel of land. At the time of this discussion, the size of the parcel was thought to be around thirty acres. A later survey revealed it was only about twenty acres.

[¶ 6.] Subsequently, Gulbransen drew up and signed a document that he sent to Kinkead, Jacobson and another adjoining landowner. The document read:

> This is to confirm agreement on the sale/transfer of property from the Small Tracts Act case # 0207 to (name). At this date, exact surveys are not known or located, however I will convey areas sought by the McNulty's, Kinkead's and Mr. Jacobson. (McNulty's seeking areas between their property and Kinkead's, Kinkead's below their home to gate to mine, and Mr. Jacobson property located on the South end of the tract.) Property will be located and sold to requesting parties at sale price obtained from the Forest Service plus price of survey and cost of mineral claims located on said property. I am in agreement with requests and will work with adjacent landowners to satisfy their requests.

Upon receiving this document, Kinkead inserted a detailed description of the land he sought, signed it and forwarded it to the Forest Service. Jacobson signed the agreement and forwarded it to the Forest Service without any addition to the description of the land.

[¶ 7.] The Forest Service completed the sale of the land to Gulbransens in July

1997. Some months later, Gulbransen and Jacobson met to walk the land and to set the boundary, but were unable to agree on the land to be conveyed to Jacobson. This suit followed with Jacobson seeking specific performance against Gulbransens.

[¶ 8.] The trial court found Gulbransen was not a credible witness based on both the substance of his testimony and his demeanor. However, it found Jacobson was a very credible witness. With respect to the sale, the trial court determined it was in Jacobson's self-interest to maintain the status quo and that he withdrew his objections to the sale out of courtesy to Gulbransen and in reliance upon the agreement between the parties. Additionally, the court determined Gulbransen refused to convey the land because the final size of the parcel was smaller than expected and thus, financing was less of an issue for him. In addition, land values had increased dramatically during the period between the initial negotiations and the time for conveyance.

[¶ 9.] Based upon the evidence and testimony, the trial court concluded there was an agreement between the parties to convey the south end of the parcel consisting of all but five acres retained by Gulbransens and other small parcels requested by other neighbors. The court decreed specific performance of this agreement. The original judgment also awarded attorney's fees as damages. The trial court subsequently vacated this judgment and entered an amended judgment denying the attorney's fees.

[¶ 10.] Gulbransens appeal the trial court's finding of an agreement for the conveyance of land and its decree of specific performance. By notice of review, Jacobson challenges the court's denial of attorney's fees.

## STANDARD OF REVIEW

[¶ 11.] Our review begins with the findings of fact and a determination of whether the findings support the conclusions of law. Unless shown to be clearly erroneous, a trial court's findings of fact will not be disturbed. *Geraets v. Halter,* 1999 SD 11, ¶ 12, 588 N.W.2d 231, 233. Conclusions of law are reviewed *de novo.* *Id.* at 234.

## DECISION

[¶ 12.] **There was an enforceable agreement between the parties.**

[¶ 13.] The trial court's determination that there was an agreement between the parties was based on the evidence and testimony presented at trial. When, as here, the court's conclusions are so grounded, they will be reviewed with great deference. *See e.g., Jeschke v. Wockenfuss,* 534 N.W.2d 602, 604 (S.D.1995) (credibility of witnesses and weight accorded their testimony is for the trial court and we accept that version of the evidence and any reasonable inferences favorable to the trial court's determination).

[¶ 14.] The trial court found Jacobson and the reasons given for his conduct were more credible than Gulbransen and the reasons supplied for his conduct. Because these findings are sufficiently based on the evidence and because the trial court is in the best position to judge the credibility of witnesses and to resolve disputes of fact, they will not be disturbed.

[¶ 15.] To be enforceable under South Dakota's statute of frauds, a contract for the sale of land or some memorandum of the agreement must be in writing.

> The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing:
>
> . . .
>
> (3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one

year. However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof[.] SDCL 53–8–2. If the writing is a memorandum, it must describe the land, the price and the parties to the contract. *Amdahl v. Lowe*, 471 N.W.2d 770, 774–775 (S.D.1991). It is not necessary that it provide a precise description of the land. *Id.* at 775. To be sufficient, the description must merely be clear enough for extrinsic evidence to precisely identify the land. *Id.* "A general description of the land which is the subject of the contract is sufficient, and parol evidence may be admitted to provide the more particular description." *Id.* There is no dispute that the memorandum confirming the agreement for the sale of property was signed by Gulbransen and Jacobson. This writing meets the requirement of the statute of frauds that there be written evidence that the parties reached an agreement.

[¶ 16.] Gulbransen argues that the description of land in the memorandum was indefinite or uncertain and that this resulted in an unenforceable agreement. The memorandum described the land to be conveyed to Jacobson as "the south end of the tract" and stated that, "I [Gulbransen] will convey areas sought by . . . Mr. Jacobson." The memorandum concluded with the statement that, "I am in agreement with their requests and will work with adjacent landowners to satisfy their requests." The trial court also allowed parol evidence of the parties' discussion to more precisely identify the parcel to be conveyed and all parties testified as to the land constituting that parcel. The trial court found Jacobson to be a very credible witness and found Gulbransen was not credible "based on the substance of his testimony as well as his demeanor while testifying."

[¶ 17.] This Court has stated that: SDCL 53–8–2 requires that an agreement for the sale of real property be in writing, and subscribed by the party to be charged, before the agreement will be enforceable. *The agreement itself need not be the writing relied upon, a memorandum evidencing the obligation is sufficient.* SDCL 53–8–2. "The memorandum serves to furnish written evidence of the obligation to be enforced against the party who subscribes his name to the memorandum; *that is, a memorandum is not required to make a contract but merely to evidence in writing that a contract has been entered into.*" *The memorandum need not embody the exact terms of the contract;* "*it is sufficient that the substance of a contract for the purchase of real property is inferred from the writing[.]*"

*Wiggins v. Shewmake*, 374 N.W.2d 111, 114 (S.D.1985)(emphasis added) (citations omitted).

[¶ 18.] "A general description of the land which is the subject of the contract is sufficient, and parol evidence may be admitted to provide the more particular description." *Amdahl*, 471 N.W.2d at 775. Further, a property description giving the grantor or grantee the right to pick a certain acreage is not indefinite. *See Holland v. Windsor*, 461 P.2d 47 (Wyo.1969); *Delaney v. Shellabarger*, 76 Nev. 341, 353 P.2d 903 (1960).

[¶ 19.] Here, the trial court found that, based on the writing, the surrounding circumstances and the testimony, the agreement of the parties was to allow Gulbransens to select five acres around their house and, except for small parcels sold to others, to convey the remaining acreage in the southern portion of the property to Jacobson. Moreover, the trial court found that the construction of the contract urged by Gulbransens, *i.e.* that the agreement was to convey only the southeast corner of the parcel to Jacobson, was inconsistent with the writing and conversation that took place when the parties reached their agreement. The language of the agreement specified that the south end would be

sold to Jacobson. Gulbransen's construction of the agreement as covering only the southeast corner contradicted that language.

[¶ 20.] More to the point, the trial court concluded that construing the agreement to require the sale of the entire southern end of the parcel was the only construction that would make sense in light of Jacobson's conduct. When he originally heard of the planned sale of the parcel, Jacobson wrote to Paul Ruder, the Forest Service Ranger, objecting to the sale because he did not want the land sold or developed. It was to Jacobson's advantage to have the Forest Service own the land because, under Forest Service ownership: he had access to nearly inaccessible land that he owned; he had an alternate escape route through the land in case of fire; and, as the trial court noted, he had these advantages without the burdens of owning the land himself. Jacobson had it in his power to continue to object to and, thus, block the sale. Instead, he agreed to withdraw his objections in exchange for the southern end of the parcel excluding the five acres abutting Gulbransens' land.

[¶ 21.] Jacobson's actions enabling the Forest Service's sale of the land to Gulbransen to go forward make no sense absent the assumption that he would retain the benefits he sought to protect when he objected to the sale. The trial court found it was not credible that Jacobson would surrender these advantages for no more than the southeast corner of the parcel.

[¶ 22.] To form a contract, there must be a meeting of the minds or mutual assent on all essential terms. *Read v. McKennan Hosp.*, 2000 SD 66, ¶ 23, 610 N.W.2d 782, 786. Whether the parties had such a meeting of the minds is a question of fact. *See Lawrie v. Riss & Co.*, 248 F.2d 256, 259 (8th Cir.1957) (whether or not there was a meeting of the minds was a question of fact for the trial court to determine). Whether there was mutual assent is determined by looking at the words and conduct of the parties.

*Read,* 2000 SD 66 at ¶ 25, 610 N.W.2d at 786.

[¶ 23.] The trial court determined there was mutual assent to a contract between the parties for the sale of the parcel of land in this case. It made this determination based upon the memorandum, the surrounding circumstances and the parties' testimony. The contract between the parties allowed Gulbransens to select and retain five acres around their house and, except for small parcels sold to other neighbors, required them to convey the remaining acreage in the southern portion of the property to Jacobson. The trial court was correct in its finding of mutual assent to this contract and in determining that an enforceable agreement existed.

[¶ 24.] **Promissory estoppel also removes the agreement from the statute of frauds.**

[¶ 25.] The trial court further determined that the doctrine of promissory estoppel or detrimental reliance removed the parties' agreement from the statute of frauds. Jacobson, in reliance on the agreement that Gulbransen would convey the south end of the Forest Service parcel to him, allowed the sale to go through by withdrawing his objections and by so notifying the Forest Service. His conduct grew out of the agreement and was directly referable to it.

[¶ 26.] The role of the statute of frauds is an evidentiary one. "[T]he purpose of the statute . . . is to remove . . . uncertainty . . . by providing written evidence of an enforceable obligation." *Sabhari v. Sapari*, 1998 SD 35, n. 9, 576 N.W.2d 886, 893. The statute of frauds will not, however, be used to work an injustice. *See Matter of Estate of Gosmire*, 331 N.W.2d 562 (S.D.1983) (grantors, through partial performance of their obligation, removed oral contract to convey land from statute of frauds). Jacobson, in reliance upon his agreement with Gulbransens, withdrew his opposition to the sale of the

land by the Forest Service and, thus forfeited the benefits he received from Forest Service ownership. Such detrimental reliance takes the agreement out of the statute of frauds. *See Farmers Elevator Co. of Elk Point v. Lyle,* 90 S.D. 86, 238 N.W.2d 290, 293 (1976) (doctrine of promissory estoppel prevented party from asserting statute of frauds defense); *Matter of Estate of Williams,* 348 N.W.2d 471, 475 (S.D.1984) (estoppel arises where conduct or acts induce a party to alter his position or to do what he otherwise would not have done to his prejudice). *See also Scott v. Hyde,* 440 N.W.2d 528, 531 (S.D.1989) (this court has recognized the doctrine of promissory estoppel where a party has detrimentally relied on the promise of another).

[¶ 27.] The elements of promissory estoppel or detrimental reliance are, " '[a] promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance[.]' " *Scott,* 440 N.W.2d at 531 (quoting *Valley Bank v. Dowdy,* 337 N.W.2d 164, 165 (S.D.1983)). Such a promise is binding " 'if injustice can be avoided only by enforcement of the promise.' " *Id.* In this case, the parties entered into an agreement that Gulbransens would retain the five acres next to their land, Kinkead and others would get the land next to their properties and Jacobson would get the remaining property in the southern end of the parcel. This agreement was reached so the land would be sold by the Forest Service to Gulbransen; *i.e.,* the promise to convey was made to induce Jacobson to withdraw his objections to the sale.

[¶ 28.] As a direct result of the agreement, Jacobson did withdraw his objections and the sale of the parcel to Gulbransens occurred. This Court has held that, where there is such reasonable reliance upon a promise, the promisee is entitled to specific performance.

An oral promise to convey real property is enforceable by specific performance where the grantee has partially performed or has acted in reliance upon the promise of the grantor in such a manner that it would invoke a fraud or prejudice against the grantee not to grant specific performance thereon.

*Gosmire,* 331 N.W.2d at 567. The trial court correctly determined that Jacobson acted in reasonable reliance on Gulbransen's promise to convey the southern portion of the Forest Service parcel, thus taking the agreement out of the statute of frauds. The agreement was enforceable under the doctrine of promissory estoppel.

[¶ 29.] Specific performance is "[t]he presumed remedy for the breach of an agreement to transfer real property[.]" *Wiggins,* 374 N.W.2d at 115. The trial court was correct in decreeing specific performance.

[¶ 30.] **An award of attorney's fees is inappropriate in this case.**

[¶ 31.] The trial court ultimately declined to award attorney's fees to Jacobson, the prevailing party. An award of attorney's fees is not the norm. The party requesting such fees has the burden to show, by a preponderance of the evidence, the basis for such an award. *See State ex rel. Steffen v. Peterson,* 2000 SD 39, ¶ 30, 607 N.W.2d 262, 271 (party filing motion for award of attorney's fees has burden of proving entitlement to award by preponderance of evidence). Furthermore, this Court has said that, " '[a]s a rule, attorney fees may only be awarded by contract or when explicitly authorized by statute.' " *Matter of Estate of O'Keefe,* 1998 SD 92, ¶ 17, 583 N.W.2d 138, 142 (citations omitted). Jacobson argues he is entitled to attorney's fees because the lawsuit was induced by Gulbransens' fraud. He urges this Court to carve out an exception to the rule barring such awards. We decline to create such an exception.

[¶ 32.] Affirmed.

[¶ 33.] AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 34.] SABERS, Justice, concurs in part and dissents in part.

[¶ 35.] LEE D. ANDERSON, Circuit Judge, for MILLER, Chief Justice, disqualified.

SABERS, Justice (concurring in part and dissenting in part).

[¶ 36.] I concur in all respects except for the denial of damages to Jacobson resulting from Gulbransen's fraud in the form of attorney's fees. These attorney's fees were directly caused by Gulbransen's fraud and his refusal to deed the property to Jacobson, and constitute Jacobson's damages. The majority opinion incorrectly characterizes Jacobson's attempt to recover these damages under these facts as an attempt to carve out a new exception to the rule barring such recovery. Therefore, I dissent as to issue 3.

[¶ 37.] As a general rule, attorney's fees may only be awarded by contract or when explicitly authorized by statute. *O'Connor v. King*, 479 N.W.2d 162, 166 (S.D.1991). Yet, "[i]n singular circumstances we have allowed attorney['s] fees as damages, though not expressly authorized by statute." *Schuldies v. Millar*, 1996 SD 120, ¶ 37, 555 N.W.2d 90, 100. In so doing, we have recognized a limited exception allowing the recovery of attorney's fees as damages for a party attempting to recovery property wrongfully converted by another. *Colton v. Decker*, 540 N.W.2d 172, 178 (S.D.1995). *See generally,* Dan B. Dobbs, *Law of Remedies* § 3.10(3) (2d Ed. 1993) (outlining exceptions to the general rule); John Leusdorf, *Recovering Attorney's Fees as Damages*, 38 Rutgers L. Rev. 439 (1986). The facts in this case clearly support the application of this rationale.

[¶ 38.] A party is entitled to recover attorney's fees as damages for a party's wrongful conversion of property. These "pursuit" expenses include attorney's fees, as those fees properly flow from the act of recovering property wrongfully dispossessed. *See Rollins v. Leibold*, 512 P.2d 937, 945 (Alaska 1973); *Motors Ins. Corp. v. Singleton*, 677 S.W.2d 309, 315 (Ky.Ct. App.1984); *Fulks v. Fulks*, 95 Ohio App. 515, 121 N.E.2d 180, 182 (1953); *Schuldies*, 1996 SD 120 at ¶ 48, 555 N.W.2d at 100 (Sabers J., concurring).

[¶ 39.] In this case, SDCL 20–10–1 provides in part that "[o]ne who willfully deceives another ... is liable for *any* damage which he thereby suffers." (emphasis added). The legislature did not exempt Gulbransen from any damage except attorney's fees, and we should not either. In *Colton*, 540 N.W.2d at 178, we stated that attorney's fees were reasonable expenses incident to recovering clear title to an impounded vehicle. The statutory authority we relied upon in *Colton* provided that the party should recover for their reasonable expenses resulting from the failure to provide clear title. *See* SDCL 57A–2–715. That statutory authority does not specifically grant attorney's fees but utilizes language similar to SDCL 20–10–1 by providing recovery for "expenses reasonably incurred," "any other reasonable expenses," and resulting from "any loss" or "any breach." This rationale is equally applicable to granting attorney's fees as damages under SDCL 20–10–1 on these facts.

[¶ 40.] Jacobson was forced to incur substantial legal expenses as a result of Gulbransen's attempt to keep the property he previously agreed to convey. This is particularly egregious conduct as Gulbransen was permitted to make this purchase only because he fraudulently obtained Jacobson's approval to the proposed sale. After Jacobson gave his approval, Gulbransen refused to sell the identified property pursuant to the agreement. Gulbransen's fraudulent conduct forced Jacobson to bring an action for specific performance forcing Gulbransen to convey the property as agreed. The majority opinion recognizes Jacobson was legally entitled to the property. Gulbransen's actions are tanta-

mount to the conversion of the property identified for sale to Jacobson. Jacobson's damages were suffered in pursuit of the property he was entitled to purchase, and attorney's fees as damages are recoverable in this circumstance.

[¶ 41.] I would reverse and remand for a determination of the reasonable amount of attorney's fees as damages reasonably incurred or expended to recover the property.