2003 SD 50

**ESTATE OF John Leland
NEISWENDER,
Deceased.**

No. 22331.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 2002.

Decided April 30, 2003.

Michael W. Strain and Candi L. Thomson of Morman Law Office, Sturgis, South Dakota, Attorneys for appellant, Claire Neiswender.

John R. Frederickson of Frederickson Law Office, Deadwood, South Dakota, Attorneys for appellees, Margaret Reedy and Elaine Neiswender.

LEE D. ANDERSON, Circuit Judge.

[¶ 1.] Claire Neiswender, as personal representative of the Estate of John Leland Neiswender, appeals from the judgment in favor of the contestant, Elaine Neiswender and other interested heirs.

[¶ 2.] Claire is the widow of John. Elaine is John's daughter from a prior marriage. The trial court held that the parties had reached a settlement agreement. Under the agreement Claire, individually and as personal representative of the Estate, agreed to deed real property located in New Mexico to John's cousin, Merilyn Howard, in exchange for all other heirs relinquishing any other interest or claims in the Estate. Later Claire requested that the grantees under the deed be changed to Elaine and her sister, Margaret Reedy. On appeal Claire contends that no enforceable agreement was reached.

[¶ 3.] This is the second time this case has been before this Court. *See Estate of Neiswender*, 2000 SD 112, 616 N.W.2d 83 (*Neiswender I* ). There we held that no irrevocable family agreement existed between John and his co-tenants restricting the transfer of the New Mexico property to blood relatives.

FACTS

[¶ 4.] John died on July 17, 1998. His will specifically bequeathed $1,000 to each of his two daughters, Margaret Elizabeth Reedy (Margaret) and Barbara Elaine Ocshanna, a/k/a Elaine Neiswender (Elaine), as well as $20,000 to his stepdaughter (Claire's daughter), Mari Etta Vickery and a total of $23,000 to his five grandchildren. His will also bequeathed his interest in land located in New Mexico to his wife Claire. The property consists of 160 acres leased for oil and gas exploration and production. John had a twenty-five percent interest in the land.

Settlement negotiations

[¶ 5.] Claire commenced informal probate proceedings on July 24, 1998. Elaine objected to the proceedings and filed a will contest which ultimately resulted in the court converting the estate to a formal probate and appointing Claire as personal representative with limited authority. In *Neiswender I* we held that no family agreement existed which would cause the New Mexico property to be excluded from

the estate. While that issue was pending on appeal before this Court, negotiations ensued between Elaine (along with her family members) and Claire to settle disputed issues concerning the distribution of the estate assets, including the New Mexico property.

[¶ 6.] These settlement negotiations were finalized in a series of letters between attorneys for the parties on July 20 and 21, 2000. At this time attorney A.P. Fuller represented Elaine and attorney Steven Beardsley represented Claire and the estate. Patrick Westerfield, an attorney from New Mexico, also represented Claire and the estate at all pertinent times and assisted the estate with the legal work surrounding the New Mexico property.

[¶ 7.] Although the last settlement letters exchanged by counsel contained some variances in minor details, it appeared that a settlement had been reached. The attorneys participated in a telephonic status conference before Judge Warren Johnson on July 25, 2000. Beardsley appeared for Claire, and Fuller appeared for Elaine. During this status conference, both attorneys agreed that the parties had reached a settlement and the only thing left was execution of documents in accordance with that settlement agreement. The settlement agreement provided:

1. The Estate and Claire personally would transfer all of their right, title, and interest in and to the New Mexico property and in and to any oil, gas, and liquid hydrocarbons or minerals associated with that property.

2. A mutual release would be signed by the Estate, Claire personally and as Personal Representative of the Estate, and all other people named in the will including Elaine and Margaret

3. Claire was to receive any oil and gas lease payments that either had been paid or were to be paid through August 1, 2000.

4. Claire was to receive all other property under the Estate whether real, personal or combined and Elaine, Margaret and their children would disavow any interest in the Estate other than their interest in the New Mexico Property.

5. All objections to the Estate and the Will would be withdrawn.

Performance under the settlement

[¶ 8.] As had been agreed at the status conference, Fuller and Westerfield began preparing the documents necessary to carry out the settlement agreement including a mutual release, a stipulation for dismissal and order for dismissal, a quitclaim deed, and an assignment of oil, gas and mineral lease.

[¶ 9.] After Claire executed the quitclaim deed and assignment with a name misspelled, Westerfield contacted Fuller by letter stating that Westerfield would forward corrected documents to Claire for re-execution. At this point, the only other document to be executed under the settlement agreement was the mutual release, which needed to be signed by Claire.

[¶ 10.] While execution of the settlement documents was proceeding, on August 16, 2000, this Court affirmed the trial court's ruling concerning the family agreement. *Neiswender I.* We held that no irrevocable family agreement existed between John and his co-tenants that would prevent transfer of the parcel to non-blood relatives.

[¶ 11.] Claire apparently became dissatisfied with the settlement agreement and refused to sign the mutual release or re-execute the quitclaim deed or assign-

ment. In response Elaine filed a series of motions including a motion to hold the personal representative in contempt, a motion to compel the personal representative to execute all settlement documents and a motion to produce signed deeds.

[¶ 12.] A hearing on the motions and on the issues of whether the parties entered into a binding settlement agreement was held on August 29, 2001. Judge Johnson held that an agreement had been reached between the parties, the details of which could be found in the correspondence between attorneys Fuller and Westerfield in July 2000 and the transcript of the status conference held July 25, 2000.

## STANDARD OF REVIEW

[¶ 13.] Our review begins with the findings of fact and a determination of whether the findings support the conclusions of law. The trial court's findings of fact are given appropriate deference unless they are clearly erroneous, but conclusions of law are reviewed *de novo*. *Jacobson v. Gulbransen*, 2001 SD 33, 623 N.W.2d 84.

[¶ 14.] When a trial court determines that an agreement exists between the parties based upon the evidence and testimony presented at trial, that determination will be reviewed with great deference. *Jacobson*, 2001 SD 33 at ¶ 13, 623 N.W.2d at 88.

## ANALYSIS AND DISCUSSION

[¶ 15.] The issue in this case is whether the parties reached an agreement settling the disputes between them. A settlement agreement is contractual in nature and subject to the same rules of construction as contracts. *Lewis v. Benjamin Moore & Co.*, 1998 SD 14, 574 N.W.2d 887. An agreement exists when the following elements are present: (1) the parties are capable of contracting; (2) the parties consent to the agreement; (3) the agreement

is for a lawful object; and (4) the parties have sufficient cause or consideration. SDCL 53–1–2. In this case there is no dispute as to the capability of the parties to contract, nor is there any dispute as to the lawful object of the agreement.

## Consent

[¶ 16.] Consent of the parties to a contract must be free, mutual and communicated by each to the other. SDCL 53–3–1. Whether consent was communicated is not an issue in this case. Communications by counsel are binding on the parties, *Lewis*, 1998 SD 14 at ¶ 10, 574 N.W.2d at 889.

[¶ 17.] Consent is not real or free if obtained through duress, fraud, undue influence, or mistake. SDCL 53–4–1. In this case, Claire contends that the contestants, namely Elaine and Margaret, withheld information from her regarding the value of the mineral interest in the New Mexico property. Therefore, Claire claims her consent was the result of fraudulent inducement.

[¶ 18.] The trial court found that the contestants of the will, including Elaine and Margaret, did not withhold any information from Claire and that any contention Claire had as to fraud or fraudulent inducement was not supported by the evidence. The trial court further found that Claire and her attorneys had personal knowledge of the mineral lease, as attested to by her signing of such a lease on April 12, 1999. Additionally, the trial court noted that it is the statutory duty of the personal representative to prepare an inventory and appraisement of the decedent's property, describing in reasonable detail the property and its fair market value, using an appraiser if necessary. SDCL 29A–3–706. It is also the duty of the personal representative to supplement this inventory and appraisement if proper-

ty not included in the original inventory comes to the representative's attention or if the value or description indicated in the original inventory turns out to be false or misleading. SDCL 29A–3–708.

[¶ 19.] Claire, as personal representative of the Estate, had a duty to know the value of the New Mexico property. The trial court held that any failure of Claire to learn the full extent and value of the mineral lease must rest on her shoulders and not those of the contestants. The record supports the trial court's finding that consent to the settlement agreement on the part of Claire was not gained through any duress, fraud, undue influence, or mistake on the part of the contestants.

[¶ 20.] Consent is not mutual unless the parties all agree upon the same thing in the same sense. SDCL 53–3–3. The existence of mutual consent is determined by considering the parties' words and actions. *Coffee Cup Fuel Stops v. Donnelly*, 1999 SD 46, 592 N.W.2d 924. In this case, Claire also contends that she and the contestants failed to establish the exact terms of the settlement agreement and that the parties were not consenting to the same terms.

[¶ 21.] In the final exchange of settlement letters between counsel there may have remained an issue whether the transfer of rights and property under the settlement agreement should occur contemporaneously. During the status conference hearing the attorneys did point out to the trial judge that the conference was only to determine the status of the tentative agreement that they believed had been reached. Following the conference, however, attorneys for both parties began preparing documents in accordance with the agreement outlined at the status conference and both parties proceeded to sign those documents without objection until

after our decision was handed down in *Neiswender I.*

[¶ 22.] The trial court found that there was a meeting of the minds on all relevant terms of the settlement agreement. This mutual meeting of the minds was evidenced by the written negotiations between Westerfield and Fuller and the conduct of the parties in executing the settlement documents following the July 25, 2000 status conference. The record supports this finding that the consent of the parties was mutual.

### Consideration

[¶ 23.] Claire also claims a lack of consideration for the agreement. Any benefit conferred or any prejudice suffered is sufficient consideration for a contract. SDCL 53–6–1. *See Harms v. Northland Ford Dealers*, 1999 SD 143, 602 N.W.2d 58; *Garrett v. BankWest, Inc.*, 459 N.W.2d 833 (S.D.1990). The trial court found that Claire was transferring the property for several reasons, including the release of any current and future claims by the contestants; to avoid being deposed; and to save further expense, personal grief, and emotional trauma associated with the ongoing family estate contest. Any of these reasons standing alone is sufficient consideration for an agreement and the trial court correctly found that sufficient consideration existed. *See Crilly v. Morris*, 70 S.D. 153, 15 N.W.2d 742 (1944); *Ewing v. Waddington*, 62 S.D. 166, 252 N.W. 28 (1933)

### Changes of the devisees

[¶ 24.] In his final order following the motion hearings on August 29, 2001, Judge Johnson amended the original agreement by changing the recipient of the New Mexico property from John's cousin, Merilyn Howard, as the parties had originally agreed, to John's daughters Elaine and

Margaret. Claire now objects to this change.

[¶ 25.] Claire herself requested that the devisees be changed. Claire sent a letter to Westerfield stating that she was interested in deeding the property to Elaine and Margaret rather than Merilyn Howard. This preference was again expressed in a phone call to Margaret on December 26, 2000.

[¶ 26.] The trial court incorporated Claire's own request in its final order entered February 22, 2002, and Elaine's family has never objected. We hold that the trial judge did not err in entering this order.

## CONCLUSION

[¶ 27.] The trial court was correct in determining that a settlement agreement was reached in the John Leland Neiswender Estate. The judgment is affirmed.

[¶ 28.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.

[¶ 29.] ANDERSON, LEE D., Circuit Judge, for AMUNDSON, Retired Justice, disqualified.

[¶ 30.] MEIERHENRY, Justice, not having been a member of the Court at the time this action was submitted to the Court did not participate.