#29298-a-PJD
**2021 S.D. 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

GERALD PAWELTZKI,                                    Plaintiff and Appellee,

    v.

ROGER PAWELTZKI and
LAWRENCE PAWELTZKI,                          Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
MCCOOK COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE CHRIS GILES
Judge

\* \* \* \*

TIMOTHY R. WHALEN
Lake Andes, South Dakota                          Attorney for plaintiff and
                                                                       appellee.


MITCHELL A. PETERSON
JUSTIN T. CLARKE
MICHAEL L. SNYDER of
Davenport, Evans, Hurwitz,
   & Smith, LLP
Sioux Falls, South Dakota                           Attorneys for defendants and
                                                                       appellants.

\* \* \* \*

ARGUED
APRIL 27, 2021
OPINION FILED **09/08/21**

#29298

DEVANEY, Justice

[¶1.] After farming with his brothers for over three decades, Gerald Paweltzki brought suit in 2012 to dissolve their farming partnership. He also asserted claims against his brothers for breach of contract and breach of fiduciary duty. Lawrence Paweltzki and Roger Paweltzki agreed that dissolution was warranted; however, they denied that Gerald was entitled to any other relief and asserted multiple counterclaims based on Gerald's alleged misappropriation of partnership assets. The procedural history of this case is complex and lengthy, spanning approximately eight years. However, this appeal concerns only whether the circuit court erred in denying Lawrence and Roger's 2013 motion to enforce a purported settlement agreement and to compel arbitration, and whether the circuit court erred in dismissing Lawrence and Roger's claim for unjust enrichment after a January 2020 trial. We affirm.

**Factual and Procedural Background**

[¶2.] Gerald, Lawrence, and Roger Paweltzki are brothers and have farmed together in McCook County, South Dakota, for multiple decades. Gerald is the oldest, and in the 1970s, he and Lawrence informally began farming together as the Paweltzki Brothers Partnership (the Partnership). They shared profits and losses, as well as the labor necessary for the farming operation. Roger joined the Partnership in the 1980s and equally shared in the farm work, profits, and losses.

[¶3.] When the Partnership began, Gerald managed the books and continued to do so for 22 years thereafter. He was also primarily responsible for handling the Partnership's relationship with the bank and other financial matters.

However, all three brothers could charge on Partnership accounts with vendors, charge expenses at businesses, and use Partnership checks for business purchases. They each took an agreed-upon monthly draw from the Partnership account in addition to their one-third share of the partnership profits.

[¶4.]    The brothers also owned land that they each farmed personally. The brothers used Partnership equipment on their personal farms, and the Partnership paid for the fuel. In addition, the Partnership routinely paid each brother's personal income taxes.

[¶5.]    In the 1980s, Lawrence and his wife, Alyce, who at the time worked at the bank where the Partnership did business, became suspicious that Gerald was using Partnership money and assets for unauthorized personal reasons. Lawrence claimed that he tried to talk to Gerald about it, but Gerald would walk away from him. Lawrence took no additional action to prevent Gerald's alleged misconduct.

[¶6.]    At some point in the 1990s, it was decided that Lawrence would handle the Partnership books and records with Alyce's help. According to Lawrence and Alyce, they continued to believe Gerald misappropriated funds and that some of his expenditures were "obviously not partnership expenses[,]" but they did not confront him about any particular charges. They also testified that nothing changed in terms of how the business operated after they took over the books. Therefore, Gerald continued to charge materials, products, supplies, and services on behalf of the Partnership; he still had full and complete access to the business checking account; and he continued to handle the business's financial matters with the bank.

[¶7.]    Eventually, in 1997, the brothers signed a written Partnership agreement, requiring, among other things, that Partnership funds only be withdrawn for Partnership use and benefit. According to Lawrence and Alyce, the bank required this document because of concerns relating to Gerald's illicit activity. However, the brothers testified that after executing the agreement, they did not change how they operated. Each of them continued to have the Partnership pay their personal income taxes and continued to use Partnership assets in their personal farming operations.

[¶8.]    In 2002, it was decided that Roger would handle the Partnership books. He testified that although control of the books changed, the brothers did not make any other changes to how they handled the Partnership's financial matters. All three could still write checks on the account, charge items to the Partnership, and pay bills on behalf of the Partnership. Roger conceded that he had the opportunity each time he received a bill to conclude that it was not a Partnership bill, but he never did so.

[¶9.]    In the fall of 2011, Gerald told his brothers that he was getting too old to continue milking the cows each morning and would be stopping his daily dairy chores. Lawrence and Roger then decided to cut Gerald off from the Partnership financially. They opened a new Partnership bank account in their names only, stopped Gerald's monthly draw, and terminated his access to Partnership funds.

[¶10.]    In October 2012, Gerald filed a lawsuit against Lawrence and Roger for dissolution of the Partnership and distribution of assets. He also asserted claims for breach of contract and breach of fiduciary duty. In their answer,

Lawrence and Roger indicated that they too desired dissolution, but they denied that Gerald was entitled to the other relief sought in his complaint. They further alleged that Gerald embezzled and misused Partnership assets for personal use in violation of the Partnership agreement and filed counterclaims alleging breach of contract, breach of fiduciary duty, civil theft, conversion, and unjust enrichment. In his reply to the counterclaims, Gerald asserted, among other defenses, that the doctrine of laches barred any right of recovery.

[¶11.] Before engaging in discovery, the parties attempted to settle their claims against each other and dissolve the Partnership. They participated in mediation on February 15, 2013, with attorney Lon Kouri as the mediator. According to an email Kouri sent to counsel for the parties at the conclusion of the mediation, "the parties have agreed to dismiss the pending litigation, including the counterclaim, with prejudice, all parties bearing their respective costs, fees and expenses[,]" and "[a]s consideration for the dismissal, the parties agree to the [identified] disposition of partnership property[.]" The email then identified terms of disposition related to real property, equipment, crop insurance, livestock, crop inventory/receivables, miscellaneous debts/assets, Gerald's personal property, and leased land. Kouri's email also indicated that "[a]ny other miscellaneous partnership assets or debts not mentioned herein or which may be acquired/incurred during close out will be split between Larry, Gerald and Roger."

[¶12.] Following this mediation, the parties could not resolve issues raised by Gerald related to equipment he believed should not have been identified as Partnership equipment. The parties also could not resolve issues related to

Gerald's belief that he owned certain bins and other items and his belief that items should be identified as fixtures rather than personal property. The parties participated in a second mediation on April 23, 2013, with Kouri again serving as the mediator. The second mediation addressed matters not addressed in the first mediation and attempted to resolve the issues Gerald expressed following the first mediation.

[¶13.]    After the second mediation, a staff member from Kouri's office emailed a copy of a draft "Settlement Memorandum" to counsel incorporating the settlement terms set forth in Kouri's email after the first mediation. The document also identified that Gerald was to be given specific pieces of equipment and that the parties agreed to distribute the remaining Partnership equipment "by way of a draft[,]" whereby each brother would pick a piece of equipment from an agreed-upon equipment inventory "until all the equipment on the list has been chosen." Neither counsel for Gerald nor counsel for Lawrence and Roger, or the parties themselves, ever signed the draft settlement agreement. Nevertheless, the parties began carrying out the settlement terms by dividing Partnership property between them.

[¶14.]    Although the parties were able to complete part of the equipment draft, issues about the distribution of equipment and real estate continued to arise between them, along with issues relating to the division of ongoing Partnership expenses and income. The record contains multiple emails between counsel on these issues, including spreadsheets prepared by counsel identifying the potential disposition of the remaining Partnership property. An email from Gerald's counsel in June 2013, noted, "As we continue our back-and-forth on these issues, it appears

we may be approaching an impasse on several of the items.  Perhaps we should simply schedule a couple days to arbitrate these issues with Lon Kouri . . . ."  In an email in October 2013, counsel for Lawrence and Roger asked, "So what happened to your client's agreement to arbitrate any unresolved issues?"  Counsel for Gerald replied that there was no agreement to arbitrate, but if there was, it "was certainly contingent upon the overall agreement of pushing this to an amicable resolution."  Gerald's counsel further noted that although the parties had tried to work toward an agreement on the issues between them, "[u]nfortunately, as the last several months have proven, an agreement cannot be reached."

[¶15.]     In December 2013, Lawrence and Roger filed a motion to enforce the purported settlement agreement and to compel arbitration.  In an affidavit in response to the motion, Gerald acknowledged that the parties had agreed, during the first mediation, on a process for dividing Partnership equipment and had agreed to a division of the Partnership's real property and debt.  However, he claimed that his agreement to these terms was based on information given to him at that mediation, information which in his view did not reflect the full picture.  For example, he explained that his agreement to give Lawrence and Roger all livestock was based on his belief that certain fat cattle had been sold prior to the mediation and that the proceeds would be used to reduce the Partnership debt.  He further claimed that following the April 2013 mediation, multiple issues arose between the parties such as: whether grain bins, fencing, and gates constituted fixtures on the real property to be divided; whether the agreement to divide the Partnership debt was contingent on Lawrence and Roger not continuing to increase it; whether hay

inventory would be divided in thirds; and whether the equipment draft included debt for the equipment.

[¶16.] The circuit court held two hearings on Lawrence and Roger's motion, the second of which included live testimony by Kouri. In June 2014, the court issued a memorandum decision and later entered findings of fact and conclusions of law denying Lawrence and Roger's motion. The court determined that Lawrence and Roger did not meet their burden of proving that the parties had "a meeting of the minds on all of the issues material to the resolution of the partnership." The court further determined that the parties did not agree to submit all remaining issues to arbitration. Alternatively, the court denied Lawrence and Roger's motion to enforce the settlement and compel arbitration because, according to the court, "[e]ven if a complete agreement had been reached," "there were several material mistakes of fact between" the parties that "would support rescission of the contract[.]"

[¶17.] After the court denied the motion, the parties continued to divide the Partnership's real property and certain assets, but Lawrence and Roger then filed a second motion to enforce the purported settlement agreement. They noted that they were not seeking to compel arbitration; rather, they were requesting that the court reconsider its prior decision given that "the grand total of [Gerald's] disagreement with the terms under which the parties agreed to split a multi-million-dollar farm partnership comes to, at most, $30,000 to $35,000." They explained that they had "studied" Gerald's affidavit submitted in response to their first motion to enforce the purported agreement and the court's findings of fact and conclusions of law denying

enforcement. They then identified what they believed to be Gerald's view of the disputed matters related to the dissolution of the Partnership and requested that the court simply accept their characterization of Gerald's view and thereafter enforce the purported settlement agreement, including the parties' agreement to release their claims against each other.

[¶18.] The court held a hearing on January 16, 2015, and at the conclusion of the hearing, the court reiterated that it had previously denied enforcement because the parties had not agreed on essential terms related to wrapping up, in totality, the Partnership. The court remarked, "At that time the agreement was presented as being one of resolving the entirety of the partnership agreement . . . . There was never any indication that the agreement or the partnership could be divided in piecemeal. There was never a meeting of the minds on that." However, the court identified that since the mediation, the parties had divided certain real property and had drafted equipment, and by this conduct, the parties had ratified those particular terms of the purported agreement. The court issued an oral ruling, followed by findings of fact and conclusions of law, directing the parties to execute the documents necessary to convey the agreed-upon real estate and agreed-upon drafted equipment.

[¶19.] After the hearing, Gerald filed a motion requesting that the circuit court determine, among other things, what constitutes a fixture on the real property the court had ordered to be transferred following the January 2015 hearing. The court held a hearing and issued a ruling determining whether grain bins, propane tanks, fencing, and other items constituted fixtures or personal property. However,

#29298

the disputes related to the division of Partnership property continued thereafter, and the parties returned to court on various motions to enforce the court's orders.

[¶20.] Amongst those proceedings before the circuit court, the parties were also attempting to adopt a process to distribute specific items of Partnership machinery, equipment, and supplies. Although they had attempted to memorialize the terms of a draft process in a "Draft Items Settlement Agreement," they ultimately could not agree on a writing. In September 2016, Lawrence and Roger filed a motion for the circuit court to enforce their version of the agreement. Gerald, now represented by new counsel, objected, asserting that no enforceable agreement existed governing the draft process because Lawrence and Roger rejected the version of the agreement he had signed.

[¶21.] The circuit court held a hearing on December 8, 2016, and thereafter entered an order enforcing the version of the draft process agreement signed by Gerald. That version specifically identified the following issues which were not encompassed or impacted by the agreement: "(a) property previously resolved or transferred per . . . prior court decisions or orders . . . ; (b) 'true-up' items[1] owned by the Partnership, which include, but are not limited to, fuel, chemicals, livestock, crops, and the particular items [the court] determined were not affixed to real property (panels, gates, posts, corral fencing, and electronic fencing); (c) Jerry's legal claims against Larry and Roger as set forth in the [c]omplaint [including his

---

1. Counsel for Lawrence and Roger explained that "[t]he concept of the true-up" involved dividing "things that couldn't really be divided." As it pertains to these items, counsel suggested that the parties would present evidence on their value, and the court would determine each partner's one-third share.

Partnership draw to which he claims he was entitled]; and (d) Larry and Roger's legal claims against Jerry as set forth in their [c]ounterclaim."

[¶22.] Approximately a year later, Lawrence and Roger filed a third motion for the court to enforce the purported settlement agreement reached by the parties following the February and April 2013 mediations.[2] They claimed that the parties had since settled many of the disputed issues between them. They then argued that "there was no disagreement" between the parties after the 2013 mediations as to the items noted in the December 2016 order as the remaining issues needing to be litigated, i.e., the livestock, crops, and the parties' claims against each other. In particular, they claimed "as far back as the original mediation on February 15, 2013," Gerald agreed to allow Lawrence and Roger to keep the livestock and crops and to release his legal claims against them in exchange for Lawrence and Roger's release of the embezzlement claim. Although Lawrence and Roger noted that the Partnership fuel inventory, oil inventory, and the gates/posts/fences/panels still needed to be trued up, they informed the circuit court that "for purposes of this motion," they "will accept [Gerald's] position and will pay [Gerald] $12,302 for these remaining true-up items if it means everything else is resolved and this case is dismissed." They further requested, in accord with their view of the purported 2013 settlement agreement, that the court enter an order directing that they be entitled to keep the livestock and crops and related proceeds and that the parties be required to release their claims against each other.

---

2. Prior to this motion, the case had been assigned to a different judge because of the previous judge's appointment to the South Dakota Supreme Court.

[¶23.] At the conclusion of a hearing in November 2017, the circuit court denied the motion but allowed the parties to conduct further discovery and potentially renew the motion at a later time. After conducting discovery, including depositions, Lawrence and Roger renewed their motion, raising the same arguments as to why the purported settlement agreement should be enforced. The court again denied their motion, indicating that it had reviewed the voluminous record covering the six years of litigation and had determined that while there was a narrowing of the issues between the parties, there was not a "global" agreement that the court could enforce. The court once again reaffirmed that the remaining issues to be addressed at trial included: (1) the valuation of Partnership livestock, crops, and remaining small items of property so that the court could determine the true-up amount Gerald was due for his one-third share; (2) Gerald's legal claims against Lawrence and Roger for breach of fiduciary duty and breach of contract; and (3) Lawrence and Roger's legal claims for breach of contract, breach of fiduciary duty, civil theft, and conversion, and their equitable claim of unjust enrichment.

[¶24.] A six-day jury trial commenced in January 2020. The jury was tasked with resolving the legal claims between the parties, including both the contract and tort claims, while the issues related to the dissolution of the Partnership and Lawrence and Roger's claim for unjust enrichment were to be resolved by the court.

[¶25.] As to Gerald's breach of contract and breach of fiduciary duty claims, Lawrence and Roger denied that their conduct harmed Gerald to the extent he alleged, but they admitted at trial that they each took $25,000 as a draw on the Partnership account during the time when Gerald was still a one-third owner of the

-11-

Partnership and agreed that Gerald was entitled to recover $25,000. On their claims against Gerald, Lawrence and Roger asserted that Gerald misappropriated over $1,000,000 in Partnership assets, starting before 2000 and continuing to 2011. They presented evidence to the jury attempting to show that this alleged conduct constituted a breach of contract, breach of fiduciary duty, civil theft, and conversion, and further relied on this same evidence to prove their equitable claim of unjust enrichment.

[¶26.] Ultimately, the jury returned a verdict in favor of Gerald on his breach of contract and breach of fiduciary duty claims, awarding him $25,000 in damages. The jury did not find in favor of Lawrence and Roger on any of their legal claims, and the court issued findings of fact and conclusions of law denying Lawrence and Roger relief on their unjust enrichment claim. The circuit court also issued findings of fact and conclusions of law identifying the value of the remaining Partnership assets and previously paid expenses, along with a judgment awarding Gerald his one-third share of certain items.

[¶27.] Lawrence and Roger appeal, challenging the circuit court's denial of their 2013 motion to enforce the purported settlement agreement and to compel arbitration and the circuit court's 2020 denial of relief on their claim for unjust enrichment.

## Analysis

1. ***Whether the circuit court erred in denying Lawrence and Roger's 2013 motion to enforce the purported settlement agreement and to compel arbitration.***

[¶28.] Lawrence and Roger contend the circuit court erroneously concluded that the parties did not reach an enforceable agreement following the February and April 2013 mediations. They note that no one objected to the terms specified in Kouri's draft agreement following the second mediation or otherwise indicated that the terms did not accurately, clearly, and unambiguously reflect the terms agreed upon by the parties. They also direct this Court to Kouri's testimony, which, in their view, supports that the parties had mutually agreed on all essential terms of the agreement, including the release of all claims against each other and an agreement to arbitrate what they deemed to be any remaining minor issues.[3]

---

3. On appeal, Gerald argues for the first time that the circuit court erred in considering mediation communications in violation of the Uniform Mediation Act (the UMA). *See* SDCL ch. 19-13A. He asserts that Kouri's evidence should be disregarded, while Lawrence and Roger contend that Gerald forfeited his right to rely on the UMA by not making this argument to the circuit court. They alternatively claim that the UMA does not apply here because there is no dispute the parties waived any privilege that could have been created by the UMA. Although Gerald did not raise a UMA violation before the circuit court, we note that it is clear from the record that the admission of Kouri's testimony did not violate the UMA. Kouri did not disclose a mediation communication as the term is defined in SDCL 19-13A-2(2). His testimony fit within the parameters of SDCL 19-13A-7(b)(1), which allows mediators to disclose "whether the mediation occurred or has terminated, whether a settlement was reached and if so the terms thereof[.]" It is likewise clear from the record that Gerald waived any privilege that would have existed. Under SDCL 19-13A-4, mediation communications are "not subject to discovery or admissible in evidence in a proceeding *unless waived* . . . as provided by § 19-13A-5." (Emphasis added.) A privilege "may be waived in a record or orally during a proceeding if it is expressly waived by all parties to the mediation[.]" SDCL 19-13A-5. At the conclusion of the first hearing on the motion to enforce, the circuit court suggested Kouri testify "as to what his understanding of the arbitration agreement was" and counsel for Gerald replied, "I wouldn't have any objection[.]" Gerald then elicited testimony from Kouri concerning the mediation.

[¶29.]     "A settlement agreement is contractual in nature and subject to the same rules of construction as contracts." *In re Estate of Neiswender*, 2003 S.D. 50, ¶ 15, 660 N.W.2d 249, 252.  Therefore, "[a]n agreement exists when the following elements are present: (1) the parties are capable of contracting; (2) the parties consent to the agreement; (3) the agreement is for a lawful object; and (4) the parties have sufficient cause or consideration." *Id.* (citing SDCL 53-1-2).  Here, the only element at issue is whether the parties consented to the purported agreement. "Consent of the parties to a contract must be free, mutual and communicated by each to the other." *Id.* ¶ 16 (citing SDCL 53-3-1).  "Consent is not mutual unless the parties all agree upon the same thing in the same sense." SDCL 53-3-3.  Thus, "[t]here must be mutual assent or a meeting of the minds on all essential elements or terms in order to form a binding contract." *Read v. McKennan Hosp.*, 2000 S.D. 66, ¶ 23, 610 N.W.2d 782, 786 (citation omitted).

[¶30.]     Whether consent is mutual "is determined by considering the parties' words and actions[,]" *see Estate of Neiswender*, 2003 S.D. 50, ¶ 20, 660 N.W.2d at 253, and when in dispute, "[w]hether the parties had a meeting of the minds is a question of fact" for the circuit court to determine, *see Melstad v. Kovac*, 2006 S.D. 92, ¶ 21, 723 N.W.2d 699, 707.  We therefore review the circuit court's findings of fact under the clearly erroneous standard of review.  *Id.*; *Estate of Neiswender*, 2003 S.D. 50, ¶ 13, 660 N.W.2d at 252.

[¶31.]     In denying Lawrence and Roger's motion, the circuit court noted that the parties participated in mediation in an attempt to resolve the disputes that arose between them and to resolve the pending litigation.  The court further noted

Gerald's acknowledgement "that an 'apparent' agreement was negotiated at the time of the second mediation[.]" However, as asserted by Gerald and acknowledged by Lawrence and Roger, the court found that there were a number of issues related to the Partnership wrap-up that were not resolved at either mediation, despite the parties' agreement on many Partnership issues. Some of the unresolved issues identified by the court concerned the Partnership's personal property including "gates and panels, augers, add-on pieces to various equipment, dairy equipment, and miscellaneous tools." The court further noted a disagreement as to "various partnership and personal expenses, such as payment of real estate taxes, utilities, rent, use of fuel inventory, fat cattle receipts, and the division of hay inventory." In the court's view, these matters were "material to the partnership wrap-up[,]" and because they were unresolved, "there was not a mutual understanding between the parties." Ultimately, the court concluded that Lawrence and Roger did not meet "their burden to show that there was a meeting of the minds on all of the issues material to the resolution of the partnership."

[¶32.] On appeal, Lawrence and Roger assert that the circuit court clearly erred in concluding that there was not a meeting of the minds on all essential terms of the parties' agreement. First, they fault the circuit court for relying "on an after-the-fact affidavit filed by [Gerald], wherein [he] claimed there were a number of contingencies to the parties' settlement agreement and various 'misunderstandings' he had about what, in fact, the parties agreed."[4] Second, they claim that the

---

4. Lawrence and Roger note that the circuit court found Gerald not credible, which in their view, further supports that the circuit court erred in relying on

(continued . . .)

evidence shows that Gerald "never expressed any genuine disagreement that the parties had reached an agreement to divvy up the Partnership's crops and livestock, in addition to its real property, along with the parties mutually exchanging a release and dismissal of each other's claims." In their view, those were the essential terms of the parties' purported agreement. They further assert that any disagreement Gerald had, which related to only a small percentage of the overall Partnership value (about one-half or 1% of the total value of the Partnership), were de minimis and not material. We address each argument in turn.

[¶33.] First, Lawrence and Roger's reference to the alleged de minimis value of the items disputed by Gerald is made only in the context of the overall value of the Partnership to be dissolved. This is problematic because the purported settlement agreement they seek to enforce would also require the parties to dismiss their respective claims against each other. What may seem minor when considering only the Partnership dissolution might nevertheless be material to the resolution of the parties' other claims, which revolved around the manner in which the Partnership had operated over the years. In any event, Lawrence and Roger have not cited authority for the proposition that when the monetary value of an unresolved matter is small in percentage as compared to the total value of the business to be dissolved via the parties' purported agreement, the unresolved terms must be considered non-essential to the agreement. There are many potential

_____

(. . . continued)

Gerald's claim that matters remained unresolved. However, that credibility determination was made six years later by a different judge following the trial. The court, in denying the December 2013 motion to enforce and to compel arbitration, did not make a specific credibility determination.

reasons why a particular contract term might be essential to a party, not all of which must hinge upon monetary value. This is particularly so when a purported agreement, like the one here, involves an attempt to dissolve in its entirety a longstanding, but continuing, business operation with inventories that are not static, while also attempting to reach an agreement to dismiss the several separate, but related, claims the business owners asserted against each other. Therefore, while Lawrence and Roger's proposition might hold true in some cases, the circumstances of each case control.

[¶34.]     Second, while the circuit court did rely on Gerald's affidavit in concluding that there was no meeting of the minds on the terms essential to the parties' agreement, the record reveals the court also relied on the written submissions by all parties, as well as the live testimony of Kouri. For example, the court indicated that the spreadsheet exhibit submitted by Lawrence and Roger "supports Gerald's claims of a number of unresolved issues between the parties, even following the second mediation." The court also relied on emails between counsel for the parties, which began after the second mediation and continued into November 2013. Our review of these emails supports the court's determination that the parties continued negotiating the terms each side was willing to agree on to dissolve the Partnership so that both sides would then dismiss their claims against each other.[5] *See, e.g.*, *Liebig v. Kirchoff*, 2014 S.D. 53, ¶ 41, 851 N.W.2d 743, 753

---

5.     For example, in one email from counsel for Gerald, his attorney wrote, "Everything since February was done with the hope that we could actually reach an agreement. Unfortunately, as the last several months have proven, an agreement cannot be reached. With seemingly every step forward, we

(continued . . .)

(concluding that a meeting of the minds did not exist in light of continued negotiations on terms essential to the agreement).  Finally, as further support for why there were "'essential terms' that had not been agreed to[,]" the court relied on Kouri's testimony that the parties had attempted to put a process in place to address any unresolved issues going forward.

[¶35.]        Nevertheless, Lawrence and Roger further assert the circuit court overlooked the fact that the parties had begun carrying out the terms of the settlement agreement following the second mediation.  In their view, this demonstrated that the parties understood that they had reached a settlement agreement and also showed that the parties ratified the purported settlement agreement.  On the contrary, the court specifically considered that the parties transferred certain property after the April mediation and observed that the parties appeared to reach an understanding as to the division of *some* of the Partnership property.  However, the court did not find that this conduct ratified the parties' purported agreement to the extent that Lawrence and Roger suggested, i.e., that it would resolve the pending litigation between the parties.

[¶36.]        Notably, a critical term of the parties' purported settlement was the alleged agreement to submit any unresolved Partnership issues to arbitration.  But in denying the motion to enforce the purported settlement agreement, the court found that the evidence showed, "at most[,]" "a discussion between the attorneys

---

(. . . continued)
      collectively take 1 if not 2 back."  Gerald's counsel then suggested, "Selling it all at auction and splitting the proceeds is the only way to get this resolved, pure and simple."

and Kouri about possibly arbitrating any issues remaining following the second mediation." On appeal, Lawrence and Roger contend the circuit court erred in concluding that the parties did not agree to arbitrate. However, a review of the record supports the court's determination. During the hearing, the court asked Kouri the pointed question whether there was an agreement to arbitrate or just discussions. Kouri replied, "There were discussions, Judge." As this Court has previously recognized, "If an agreement leaves open essential terms and calls for the parties to agree and negotiate in the future on essential terms, then a contract is not established." *Weitzel v. Sioux Valley Heart Partners*, 2006 S.D. 45, ¶ 23, 714 N.W.2d 884, 892. Moreover, the purported settlement agreement contains no terms related to arbitration, and Lawrence and Roger have not identified evidence in the record to support a determination that when Gerald's counsel was referring to arbitration in his emails following the mediation, he had authority to bind Gerald. *See generally Melstad*, 2006 S.D. 92, ¶ 12, 723 N.W.2d at 704 (referring to an attorney's authority to settle on behalf of a client as dependent on evidence supporting that the client gave such authorization).

[¶37.]    Finally, it is important to view the materiality of the unresolved issues related to the Partnership dissolution through the lens of what was transpiring in 2013. At that time, the parties appeared to acknowledge the need for a further arbitration before all the other pending claims between them could be dismissed. The fact that the court later ruled on several of these disputes, and additional property was thereafter transferred, should not obscure the significance of these unresolved issues at the time the court denied Lawrence and Roger's 2013 motion.

Lawrence and Roger fail to recognize that these disputes, which they deem to be "minor," impeded the parties' ability in 2013 to carry out the larger components of the purported agreement, including the transfer of at least some of the real estate and the completion of the equipment draft, both of which were necessary to reach a settlement resolving all the pending claims. The materiality of these unresolved issues becomes even more apparent in the absence of an agreement to arbitrate future issues.

[¶38.] Because Lawrence and Roger have not established that the circuit court clearly erred in finding that there was not a meeting of the minds on all essential terms, we affirm the circuit court's decision denying Lawrence and Roger's December 2013 motion to enforce the purported settlement agreement and to compel arbitration.[6]

_____

6. Although not briefed by the parties, but of further note, during oral argument, when asked what remedy they are seeking if this Court agrees that the circuit court erred, counsel for Lawrence and Roger asserted that the proper remedy would be to reverse the jury's $25,000 award to Gerald on the breach of contract and fiduciary claims, which were supposed to be dismissed per the purported settlement, and also reverse the circuit court's award to Gerald of one-third of the value of the livestock and crops because Gerald had agreed that Lawrence and Roger were to receive those items. Counsel further suggested that the circuit court's remaining determinations after trial on the other true-up items (which largely favored Lawrence and Roger) could remain intact. But this suggestion ignores the final component of the purported agreement requiring any remaining unresolved matters to be resolved by arbitration—a resolution which may or may not have resulted in the same true-up determinations as those ultimately reached by the circuit court. A conclusion that the circuit court erred in finding no enforceable agreement in 2013 would therefore necessitate a reversal of the court's 2020 judgment following the trial and a remand for further proceedings consistent with the settlement terms.

(continued . . .)

### 2. Whether the circuit court erred in denying Lawrence and Roger relief on their claim for unjust enrichment.

[¶39.] Lawrence and Roger claim the circuit court erroneously determined that their unjust enrichment claim is barred by the doctrine of laches. Gerald disagrees, but he further asserts that "once the jury ruled on Lawrence and Roger's legal claims, the law prohibit[ed] them from presenting the identical claims in the form of the equitable remedy of unjust enrichment to the trial court." More specifically, he claims that because Lawrence and Roger had available to them an adequate remedy at law for the exact same injury for which they sought equity, they could not obtain relief from the circuit court on the equitable theory of unjust enrichment.

[¶40.] In response, Lawrence and Roger contend that this Court should decline to consider Gerald's further argument because he did not raise it before the circuit court. It is true that Gerald did not raise this particular argument below.[7]

_____

(. . . continued)

We further note that the court's order denying the 2013 motion to enforce the purported settlement contains an alternative ruling that Gerald would be entitled to a rescission on the grounds of mistake of fact as to several later discovered matters even if the parties had agreed upon the essential terms. Lawrence and Roger have not appealed this alternative ruling, and it is not easy to discern the import of this ruling given the subsequent rulings issued by the court. In any event, because we have determined that the circuit court properly denied enforcement of the purported agreement, we need not contemplate the effect of the alternative ruling on this appeal or what an unwinding of the clock might look like if the purported settlement agreement had been deemed enforceable.

7. Instead, the parties' focus before the circuit court appeared to be on the avoidance of a duplicative recovery. For example, prior to trial, counsel for Lawrence and Roger explained that although they would be presenting the

(continued . . .)

However, Lawrence and Roger have had an opportunity to respond to Gerald's argument in their reply brief, and although we generally do not address issues for the first time on appeal, "this is merely a rule of procedure and not a matter of jurisdiction." *State v. Chant*, 2014 S.D. 77, ¶ 7, 856 N.W.2d 167, 169 (quoting *Sharp v. Sharp*, 422 N.W.2d 443, 445 (S.D. 1988)); *see also In re J.D.M.C.*, 2007 S.D. 97, ¶ 27, 739 N.W.2d 796, 805; *State v. Gard*, 2007 S.D. 117, ¶ 16, 742 N.W.2d 257, 261 (noting that the parties both fully briefed the issue). Thus, we have "discretion to disregard the general rule of administration[,]" particularly when, as here, "the question raised for the first time is one of substantive law which is not affected by any factual dispute, for under such circumstances the parties may present the issue as thoroughly in the appellate court as it could have been presented below." *See Sharp*, 422 N.W.2d at 445. Moreover, even if Gerald had not raised this issue on appeal, the initial question in determining whether the court erred in denying Lawrence and Roger's unjust enrichment claim, is whether, as a matter of law, they could seek the equitable remedy of unjust enrichment when they had available to them an adequate remedy at law.

[¶41.] A claim of "[u]njust enrichment contemplates an involuntary or nonconsensual transfer, unjustly enriching one party." *Johnson v. Larson*, 2010 S.D. 20, ¶ 8, 779 N.W.2d 412, 416. "An enrichment is unjust if it 'lacks an adequate

---

(. . . continued)

same evidence to support their request for relief on the unjust enrichment claim and their request for a favorable jury verdict on their legal claims, they would elect a remedy in the event both the jury and the court decided these claims in their favor. On appeal, Lawrence and Roger similarly focus their argument on the notion that the rules of civil procedure allow them to assert legal and equitable claims, so long as they do not recover duplicate damages.

legal basis; [i.e.,] it results from a transaction that the law treats as ineffective to work a conclusive alteration in ownership rights.'" *Dowling Fam. P'ship v. Midland Farms*, 2015 S.D. 50, ¶ 24, 865 N.W.2d 854, 864 (quoting Restatement (Third) of Restitution & Unjust Enrichment § 1 cmt. b (2011)). A request for relief because of unjust enrichment sounds in equity, *see Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 14, 658 N.W.2d 783, 788, and it is well settled that "[a]n essential element to equitable relief is the lack of an adequate remedy at law." *Rindal v. Sohler*, 2003 S.D. 24, ¶ 12, 658 N.W.2d 769, 772.

[¶42.]     Here, Lawrence and Roger had available to them an adequate remedy at law against Gerald via their claims for breach of contract, breach of fiduciary duty, civil theft, and conversion. Thus, they could not seek equitable relief for the same alleged wrong. Whether Gerald benefited from his use of Partnership property in a manner that was inequitable is inherently dependent on whether his use of the property was in violation of either the informal or written Partnership agreement. *See, e.g.*, *Burch v. Bricker*, 2006 S.D. 101, ¶ 18, 724 N.W.2d 604, 609 (rejecting a claim for unjust enrichment because such "remedy is unavailable when the rights of the parties are fixed by the terms of a written contract"). An equitable remedy is therefore not available because the parties' conduct is governed by an existing legal relationship.

[¶43.]     Lawrence and Roger note that the elements necessary to prove their legal and equitable claims are not identical. They therefore contend that so long as they do not recover duplicate damages, they could pursue both legal and equitable theories of relief on the same conduct giving rise to their legal and equitable claims.

On the contrary, regardless of whether the *elements* of their legal claims (breach of contract, breach of fiduciary duty, civil theft, and conversion) and equitable claim of unjust enrichment differ, there would be no basis for equity to step in here because the law provided Lawrence and Roger an adequate remedy for Gerald's alleged conduct. And despite their suggestion to the contrary, the fact that the jury found they did not prove their legal claims does not afford Lawrence and Roger a second bite of the apple to seek equitable relief for the exact same conduct. As one court explained, "Equity generally will not provide relief where an adequate remedy at law existed and defendant was denied that relief for appropriate legal reasons." *Mosebach v. Blythe*, 282 N.W.2d 755, 761 (Iowa Ct. App. 1979). Because the circuit court could not, as a matter of law, render equitable relief under the circumstances, we affirm the circuit court's judgment denying Lawrence and Roger relief on their unjust enrichment claim.[8]

[¶44.] Affirmed.

[¶45.] KERN, SALTER, and MYREN, Justices, and GILBERTSON, Retired Chief Justice, concur.

[¶46.] JENSEN, Chief Justice, deeming himself disqualified, did not participate.

[¶47.] GILBERTSON, Retired Chief Justice, sitting for JENSEN, Chief Justice, disqualified.

---

8. Because of our determination that equitable relief could not be afforded when Lawrence and Roger had an adequate remedy at law, as they did here, we deem it unnecessary to address the merits of the circuit court's ruling that the unjust enrichment claim was barred by the doctrine of laches.